**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HACE and VILLAS CARIBE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION, et al.,<br><br>Defendants. | Case No. 2:26-cv-3695 |

**DEFENDANT NAVY FEDERAL CREDIT UNION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ALLEGATIONS IN COMPLAINT AND PROCEDURAL BACKGROUND ..... 2

III. STANDARD OF REVIEW ..... 3

IV. ARGUMENT ..... 4

A. Plaintiffs Fail to State a Claim Against Navy Federal for Violation of 13 Pa. C.S. § 4A207 (Count V) ..... 4

1. Navy Federal Was Entitled to Rely on the Account Number When Processing the Wire ..... 5

2. Plaintiffs Do Not Have Standing to Pursue a Claim Against Navy Federal ..... 7

B. Plaintiffs' Various Negligence Claims (Counts VI–X) and Other Tort Claims (Counts XI–XII) Fail as a Matter of Law ..... 9

1. The Provisions of Article 4A Preempt Plaintiffs' Claims for Negligence ..... 10

2. Even If Plaintiffs' Negligence Claim is Not Preempted, They Have Failed to State a Claim Because Navy Federal Owed Them No Duty ..... 12

3. Plaintiffs' Remaining Tort Claims for Aiding and Abetting Fraud and Conversion Fail ..... 13

C. Permitting Plaintiffs to Amend the Complaint Would be Futile ..... 15

V. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Sogliuzzo*,
625 F. App'x 565 (3d Cir. 2015) ....................12

*Approved Mortg. Corp. v. Truist Bank*,
106 F.4th 582 (7th Cir. 2024) ....................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3

*Baraka v. McGreevey*,
481 F.3d 187 (3d Cir. 2007)....................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................3

*Berry v. Regions Fin. Corp.*,
507 F. Supp. 3d 972 (W.D. Tenn. 2020)....................8

*Binns v. Truist Bank*,
803 F. App'x 618 (3d Cir. 2020) ....................10

*Bucci v. Wachovia Bank, N.A.*,
591 F. Supp. 2d 773 (E.D. Pa. 2008) ....................10

*Chemalloy Co. v. Citibank, N.A.*,
609 F. Supp. 3d 370 (E.D. Pa. 2022) ....................12

*Cooper v. Frankford Health Care Sys., Inc.*,
960 A.2d 134 (Pa. Super. Ct. 2008)....................10

*Elkin Valley Baptist Church v. PNC Bank, N.A.*,
748 F. Supp. 3d 293 (W.D. Pa. 2024)....................11, 13

*Figueroa v. Point Park Univ.*,
553 F. Supp. 3d 259 (W.D. Pa. 2021)....................15

*Fragale v. Wells Fargo Bank, N.A.*,
480 F. Supp. 3d 653 (E.D. Pa. 2020) ....................7, 10, 12

*Gemstone Foods, L.L.C. v. JPMorgan Chase Bank, N.A.*,
No. 26-60049, 2026 WL 1507876 (5th Cir. May 29, 2026)....................13

*Glenn Distribs. Corp. v. Carlisle Plastics, Inc.*,
297 F.3d 294 (3d Cir. 2002)........5

*GN Pro Grp., LLC v. Well Done ASAP, LLC*,
764 F. Supp. 3d 757 (N.D. Ill. 2025)........6

*Grain Traders, Inc. v. Citibank, N.A.*,
160 F.3d 97 (2d Cir. 1998)........8

*Kent Grp. Partners, LLC v. Citizens Bank, Nat'l Ass'n*,
688 F. Supp. 3d 608 (N.D. Ohio 2023)........6

*Marion v. Bryn Mawr Tr. Co.*,
288 A.3d 76 (Pa. 2023)........13, 14

*Meridian Growers Processing, Inc. v. J.P. Morgan Chase Bank, N.A.*,
750 F. Supp. 3d 1180 (E.D. Cal. 2024)........6

*Montanez-Johnson v. Chester Upland Sch. Dist.*,
762 F. Supp. 3d 433 (E.D. Pa. 2025)........16

*Ockley v. Radnor Twp.*,
802 F. Supp. 3d 743 (E.D. Pa. 2025)........15

*Robern, Inc. v. Glasscrafters, Inc.*,
206 F. Supp. 3d 1005 (D.N.J. 2016)........3

*Rooney v. City of Phila.*,
623 F. Supp. 2d 644 (E.D. Pa. 2009)........9

*Rosner v. Bank of China*,
528 F. Supp. 2d 419 (S.D.N.Y. 2007)........14

*Scura, Wigfield, Heyer, Stevens & Cammarota, LLP v. Citibank, NA*,
No. 2:21-cv-12835, 2022 WL 16706948 (D.N.J. Oct. 3, 2022)........8

*Seebold v. Prison Health Servs., Inc.*,
57 A.3d 1232 (Pa. 2012)........10

*Shonberger v. Oswell*,
530 A.2d 112 (Pa. Super. Ct. 1987)........15

*Shooter Pops LLC v. Wells Fargo Bank, N.A.*,
649 F. Supp. 3d 62 (E.D. Pa. 2023)........10, 12

*Staff Builders of Phila., Inc. v. Koschitzki*,
989 F.2d 692 (3d Cir. 1993)........5

*Studco Bldg. Sys. US, LLC v. 1st Advantage Fed. Credit Union*,
133 F.4th 264 (4th Cir. 2025) ....................5, 7

*In re TelexFree Sec. Litig.*,
357 F. Supp. 3d 70 (D. Mass. 2019) ....................14

*U.S. Att'y Gen. v. PNC Bank*,
No. 07-cv-417, 2009 WL 10736701 (E.D. Pa. Mar. 31, 2009) ....................7

*Valley Chili Props., LLC v. Truist Bank*,
738 F. Supp. 3d 846 (W.D. Tex. 2024)....................6, 9

*Van Horn, Metz & Co. v. JPMorgan Chase & Co.*,
No. 23-1693, 2024 WL 1142872 (E.D. Pa. Mar. 15, 2024) ....................13, 14, 15

*Zhejiang Matrix SCM Co. v. PNC Bank, Nat'l Ass'n*,
No. 23-cv-0979, 2024 WL 1096534 (E.D. Pa. Mar. 13, 2024) .................... *passim*

**Statutes**

7 P.S. § 606 (a)–(b) ....................11

13 Pa. C.S. § 4A101 ....................4

13 Pa. C.S. § 4A102....................4, 7

13 Pa. C.S. § 4A103....................4

13 Pa. C.S. § 4A104....................4, 9

13 Pa. C.S. § 4A207.................... *passim*

13 Pa. C.S. § 4A402(d) ....................8, 9

13 Pa. C.S. § 1202(b) ....................5

Pennsylvania Uniform Commercial Code .................... *passim*

Uniform Commercial Code.................... *passim*

**Other Authorities**

*About Us*, Navy Fed. Credit Union, https://www.navyfederal.org/about.html (last
accessed Aug. 3, 2026) ....................1

Federal Rule of Civil Procedure 12(b)(6) ....................3

https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-frauds-
and-scams/business-email-compromise....................1

## I. INTRODUCTION

This case involves an incident of what is known as business email compromise ("BEC"), a cybersecurity scam where wrongdoers target parties engaged in funds transfers, typically a home closing or construction project, and trick one of the parties into making a wire to a bank account thought to belong to a party to the transaction, but instead belonging to the scammer. BEC has become a widescale problem in the real estate and construction industries. *See* https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-frauds-and-scams/business-email-compromise.

The primary parties in this case are the typical parties involved in a BEC compromise. Plaintiffs HACE and Villas Caribe LLC (collectively, "Plaintiffs") were engaged in a construction project, and instead of wiring funds to their general contractor, wired funds pursuant to instructions from a scammer posing as the general contractor to the fraudster's account at Navy Federal Credit Union ("Navy Federal").[1] Rather than pursuing the fraudster—other than as an unknown "John Doe" defendant—or the contractor whose email was hacked, Plaintiffs are attempting to recover $800,000 in damages from Navy Federal (the bank which received the wired funds), alleging that it violated the Pennsylvania Uniform Commercial Code ("UCC") and was negligent. Shockingly, Plaintiffs bring this outrageous claim even though they have *no* relationship with Navy Federal, and by their own admission, they were duped by a scammer into wiring money to the wrong party. The law does not support Plaintiffs' claims, and they are not entitled to relief or damages from Navy Federal. This case must be dismissed with prejudice.

---

[1] Navy Federal is a member-owned, not-for-profit federal credit union founded in 1933. It serves the military community, veterans, and their families by offering affordable products and services. *About Us*, Navy Fed. Credit Union, https://www.navyfederal.org/about.html (last accessed Aug. 3, 2026).

## II. ALLEGATIONS IN COMPLAINT AND PROCEDURAL BACKGROUND

Plaintiffs allege that they had a construction agreement with JBL Construction Services ("JBL") and its principal, Joe Levin, to construct and update low-income housing facilities in Philadelphia. Compl. ¶¶ 20–21. JBL was hired as a general contractor for the project. *Id.* ¶ 22. During the project, JBL provided Plaintiffs with wire instructions for payments. *Id.* ¶¶ 24–25. Plaintiffs allege that in approximately April 2024, an unknown hacker infiltrated JBL's email system. *Id.* ¶ 26.

Plaintiffs further allege that the hacker then pretended to be a legitimate representative of JBL and directed Plaintiffs to send a wire payment for $809,000 to an account held at Navy Federal ending in -3826 (the "Wire"). *Id.* ¶¶ 31–40. On May 31, 2024, Plaintiffs sent the Wire to the -3826 account at Navy Federal from funds held at Plaintiffs' bank, Citizens Bank, through a construction loan. *See id.* ¶¶ 30, 39. Plaintiffs allege that the wire instructions identified "JBL Construction Services, Inc." as the beneficiary of the Wire, and that the -3826 account was unrelated to JBL. *Id.* ¶¶ 41–43. According to Plaintiffs, the name on the account did not match the payee name on the wire instructions. *Id.* ¶¶ 45, 53. They allege that Navy Federal opened the fraudster's account and, in doing so, knew the identity of the account holder. *See id.* ¶¶ 50–51. Plaintiffs allege, without any supporting facts, that Navy Federal "had actual knowledge those identifiers [the name and account number] referred to different persons," purportedly because Navy Federal knew the name of the account holder on the -3826 account. *Id.* ¶¶ 48, 52.

Plaintiffs claim that by accepting the Wire despite the alleged mismatch between the name on the account and the name on the wire instructions, Navy Federal violated the law. Specifically, Plaintiffs bring counts for violation of 13 Pa. C.S. § 4A207 for misdescription of beneficiary (Count V); negligence based on account opening (Count VI); negligence based on the failure to monitor account (Count VII); negligence based on the duty to non-customers (Count VIII);

negligent enablement of imposter fraud (Count IX); negligence based on the fraudulent concealment (Count X); aiding and abetting fraud (Count XI); conversion (Count XII); and unjust enrichment (Count XVIII). The remaining counts are brought against defendants other than Navy Federal.

Plaintiffs filed their Complaint in this Court on May 29, 2026.[2] Dkt. 1. Navy Federal waived service, *see* Dkt. 7, and now files this Motion to Dismiss.

## III. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff," *Robern, Inc. v. Glasscrafters, Inc.*, 206 F. Supp. 3d 1005, 1008 (D.N.J. 2016), but courts are "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations," *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," *id.*, calling instead "for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]," *Twombly*, 550 U.S. at 556.

[2] Navy Federal notes that this is the third time Plaintiffs have attempted to bring these allegations against Navy Federal, having filed two previous lawsuits against it in the Court of Common Pleas of Philadelphia County. The latter was removed to this Court, and Navy Federal moved to dismiss, largely on the same grounds asserted herein. Navy Federal ultimately agreed that Plaintiffs could dismiss that action without prejudice. Despite having a third attempt to state a valid claim, Plaintiffs have failed to do so, as explained herein.

## IV. ARGUMENT

### A. Plaintiffs Fail to State a Claim Against Navy Federal for Violation of 13 Pa. C.S. § 4A207 (Count V)

Plaintiffs fail to state a claim for violation of 13 Pa. C.S. § 4A207 for misdescription of beneficiary for two distinct reasons: (1) Navy Federal was entitled to rely on the account number provided in the wire instructions; and (2) even if it were not, Plaintiffs do not have standing to pursue such a claim against Navy Federal based on their lack of privity.

Section 4A207 is part of Article 4A of the Pennsylvania UCC. *See* 13 Pa. C.S. § 4A101. Article 4A applies to funds transfers, *see id.* at § 4A102, which are a "series of transactions, beginning with the originator's payment order, made of the purpose of making payment to the beneficiary of the order," *id.* § 4A104(a). Under UCC parlance, a payment order is an "instruction of a sender to a receiving bank … to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary," and the sender is the "person giving the instruction to the receiving bank." *Id.* § 4A103(a)(1), (a)(5). The originator is "the sender of the first payment order in a funds transfer," and the originator's bank is "the receiving bank to which the payment order of the originator is issued if the originator is not a bank." *Id.* § 4A104(c)–(d). The beneficiary is the "person to be paid by the beneficiary's bank," which in turn is the "bank identified in a payment order in which an account of the beneficiary is to be credited." *Id.* § 4A103(a)(2)–(3). The receiving bank is that to which the sender gives the instruction for the payment order. *Id.* § 4A103(a)(4).

Applying UCC parlance to the facts here, Plaintiffs are the sender and the originator of the Wire, which is the payment order addressed to Plaintiffs' bank and its subsequent funds transfer to Navy Federal. Citizens Bank is the receiving bank and originator's bank, because that is Plaintiffs' bank to which the wire instructions were directed. The beneficiary of the funds transfer is the general contractor JBL. Navy Federal is the beneficiary bank.

### 1. Navy Federal Was Entitled to Rely on the Account Number When Processing the Wire

Plaintiffs' claim under 13 Pa. C.S. § 4A207, which governs misdescriptions of a beneficiary in the payment order, fails as a matter of law. A "misdescription" arises when a payment order uses both a name and an account number which identify different persons. *See* 13 Pa. C.S. § 4A207(b). When a beneficiary bank does not know that the name and account number refer to different persons, a beneficiary bank is entitled to rely on the account number when determining where to direct the payment. *See* 13 Pa. C.S. § 4A207(b)(1). The beneficiary bank is under no obligation to "determine whether the name and number refer to the same person." *Id.* However, if the beneficiary bank "knows that the name and number identify different persons," no person has rights to the funds and acceptance cannot occur. *Id.* § 4A207(b)(2). "Knows" in this context means having actual knowledge. 13 Pa. C.S. § 1202(b). The UCC requires that the beneficiary bank possess actual knowledge *at the time of payment* of the payment order. *See* 13 Pa. C.S. § 4A207, cmt. 2[3] ("Subsection (b)(1) deals with the typical case in which the beneficiary's bank pays on the basis of the account number and is not aware at the time of payment that the named beneficiary is not the holder of the account which was paid."). A recent Fourth Circuit decision confirmed the UCC's requirement of actual knowledge. *See Studco Bldg. Sys. US, LLC v. 1st Advantage Fed. Credit Union*, 133 F.4th 264, 273 (4th Cir. 2025) (holding that in the context of a misdescription of beneficiary case, "knowledge means actual knowledge, not imputed

---

[3] As noted on Westlaw, the commentary section of the statute is the comment to the Official Uniform Commercial Code, not Pennsylvania's state UCC. Pennsylvania has, however, adopted the UCC. *See, e.g.*, *Glenn Distribs. Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294, 301 (3d Cir. 2002); *Staff Builders of Phila., Inc. v. Koschitzki*, 989 F.2d 692, 694 (3d Cir. 1993). Federal courts analyzing Pennsylvania's UCC regularly look to the Official UCC commentary for guidance. *See, e.g.*, *Zhejiang Matrix SCM Co. v. PNC Bank, Nat'l Ass'n*, No. 23-cv-0979, 2024 WL 1096534, at *3 (E.D. Pa. Mar. 13, 2024) (citing both the Pennsylvania UCC and the commentary to the Official UCC).

knowledge or constructive knowledge" (citation modified)). "[I]f the beneficiary's bank deposits the funds into the account associated with the number designated in the payment order and it has no knowledge of any misdescription at the time of the deposit, it has no further liability." *Id.* at 274.

Merely asserting that the beneficiary bank had actual knowledge, without any supporting factual detail, is insufficient to state a claim. *See, e.g.*, *Valley Chili Props., LLC v. Truist Bank*, 738 F. Supp. 3d 846, 853 (W.D. Tex. 2024) ("Numerous courts have found allegations such as this—which merely claim that a beneficiary bank had knowledge of a mismatch, without alleging specific facts indicating the bank possessed actual knowledge—are insufficient to state a claim against a beneficiary bank under Article 4A."); *GN Pro Grp., LLC v. Well Done ASAP, LLC*, 764 F. Supp. 3d 757, 761–62 (N.D. Ill. 2025) ("[A]ctual knowledge is not established simply from the fact of the mismatch."); *Meridian Growers Processing, Inc. v. J.P. Morgan Chase Bank, N.A.*, 750 F. Supp. 3d 1180, 1186 (E.D. Cal. 2024) ("[Plaintiff] fails to sufficiently allege [the beneficiary bank's] actual knowledge of an inconsistency between the named beneficiary of the wire transfers and the account holder [and] merely asserts that an inconsistency existed and assumes that, therefore, [the bank] somehow knew of it."); *Kent Grp. Partners, LLC v. Citizens Bank, Nat'l Ass'n*, 688 F. Supp. 3d 608, 613 (N.D. Ohio 2023) ("A party claiming that a bank actually knew about a name discrepancy between wire instructions and the transferee account's owner must plead particular facts supporting the claim of actual knowledge.").

Here, Plaintiffs fail adequately to allege that Navy Federal had actual knowledge that there was a mismatch between the name and the account number on the Wire at the time of payment. Their assertions that Navy Federal "must have known" are entirely conclusory—and Plaintiffs attempt to obfuscate what, exactly, Navy Federal must have had knowledge of. Plaintiffs allege

that Navy Federal had actual knowledge of the "true identity" of the -3826 account holder. *See* Compl. ¶ 48. Because of that knowledge, Plaintiffs say, "Navy Federal already had actual knowledge those identifiers [the name and account number] referred to different persons." Compl. ¶ 52. But that is insufficient. As the Fourth Circuit in *Studco* made clear, someone at Navy Federal must have had actual knowledge *of the mismatch* at the time of the Wire. *See Studco*, 133 F.4th at 273. Plaintiffs ask this Court to make an unwarranted leap: that because Navy Federal knew the identity of the account holder, it must inherently have known there was a mismatch. That is not what the law requires. This is nothing more than a "should have known" allegation that does not meet the actual knowledge standard.

Because Plaintiffs have failed to allege actual knowledge by Navy Federal of the purported mismatch, Plaintiffs' claim for misdescription of beneficiary must be dismissed.

#### 2. Plaintiffs Do Not Have Standing to Pursue a Claim Against Navy Federal

Article 4A sets forth a "comprehensive scheme" which governs electronic wire transfers. *Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp. 3d 653, 659 (E.D. Pa. 2020) (quoting *U.S. Att'y Gen. v. PNC Bank*, No. 07-cv-417, 2009 WL 10736701, at *3 (E.D. Pa. Mar. 31, 2009)). Where a conflict arises out of a fund transfer, Article 4A applies. *See id.* ("Article 4A provides 'the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.'" (quoting 13 Pa. C.S. § 4A102, cmt.)). Article 4A thus applies to "those actions occurring between the originator's wire fund instruction … and the beneficiary bank's acceptance of the wire transferred funds." *Id.*

Section 207 prescribes a set of rules for who may recover when a beneficiary bank makes payment of a wire transfer based on the account number. *See* 13 Pa. C.S. § 4A207(c)–(d). If the originator of a payment is not a bank, and the person identified by bank number is not entitled to the payment, then the originator is not obligated to pay, absent an exception not relevant to this motion. *See id.* § 4A207(c)(2). In that situation, the originator's bank, not the originator, has the right to recover the payment. *See id.* § 4A207(d)(2). Moreover, the originator's bank may recover from the person who was improperly paid, not from the beneficiary bank. *See id.* § 4A207(d). Where "the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid," the receiving bank "is obliged to refund payment to the extent the sender was not obliged to pay." 13 Pa. C.S. § 4A402(d).

Courts have described this requirement under the UCC as requiring privity to recover, so the originator can only recover from the bank with which it has privity—its own. *See, e.g.*, *Zhejiang Matrix SCM Co.*, 2024 WL 1096534, at *4 ("[T]his Court finds persuasive the reasoning of other courts which have found a privity requirement exists."). Numerous courts have concluded that such a privity requirement is baked into Article 4A. *See, e.g.*, *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998) (affirming district court's ruling that Article 4A "allows each sender of a payment order to seek refund only from the receiving bank it paid"); *Scura, Wigfield, Heyer, Stevens & Cammarota, LLP v. Citibank, NA*, No. 2:21-cv-12835, 2022 WL 16706948, at *5–6 (D.N.J. Oct. 3, 2022) (finding a privity requirement under Article 4A and noting that an originator "may seek relief from its bank"); *Berry v. Regions Fin. Corp.*, 507 F. Supp. 3d 972, 981 (W.D. Tenn. 2020) (finding that, because there was no privity, plaintiffs could not advance a claim for misdescription of beneficiary against the beneficiary bank). As the Seventh Circuit recently

explained, the UCC "provides a framework for facilitating complicating transactions between sophisticated parties with competing interests" which requires that "fund transfers be orderly unwound payment order by payment order." *Approved Mortg. Corp. v. Truist Bank*, 106 F.4th 582, 592 (7th Cir. 2024). This is true, regardless of whether the beneficiary bank had actual knowledge of the purported mismatch. *See Valley Chili Props.*, 738 F. Supp. 3d at 853 ("[E]ven if Plaintiff had adequately alleged that Defendant had actual knowledge of the mismatch, Plaintiff could not recover the transferred funds directly from [the beneficiary bank].").

Here, as noted, Plaintiffs do not adequately allege any facts establishing that Navy Federal had actual knowledge of the purported mismatch between the name and account number in the Wire. Even if they did, it would not matter because Plaintiffs are not in privity with Navy Federal as numerous courts and the UCC require. Plaintiffs are the originator, and they are not banks. *See* 13 Pa. C.S. § 4A104(c); Compl. ¶¶ 18, 20 (describing Plaintiffs as a non-profit organization and affiliated entity). Plaintiffs are only in privity with their bank, Citizens Bank, and not Navy Federal. *See* 13 Pa. C.S. § 4A207(d)(2). Any refund to which Plaintiffs are entitled must be sought from their bank, Citizens Bank, not the beneficiary bank, Navy Federal. *See id.* § 4A402(d). For these reasons, Plaintiffs' claim for misdescription of a beneficiary must be dismissed for lack of standing.

### B. Plaintiffs' Various Negligence Claims (Counts VI–X) and Other Tort Claims (Counts XI–XII) Fail as a Matter of Law

The elements for a claim for negligence are: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's breach of the duty and the resulting injury; and (4) actual loss or damage suffered by the plaintiff." *Rooney v. City of Phila.*, 623 F. Supp. 2d 644, 660 (E.D. Pa. 2009) (citation omitted). And under Pennsylvania law, "[g]enerally … there is no duty to protect or rescue someone who is at risk on account of

circumstances the defendant had no role in creating." *Seebold v. Prison Health Servs., Inc.*, 57 A.3d 1232, 1246 (Pa. 2012). The "existence of a duty is a question of law for the court to decide." *Cooper v. Frankford Health Care Sys., Inc.*, 960 A.2d 134, 143 (Pa. Super. Ct. 2008) (citation modified). Plaintiffs allege negligence based on the account opening, failure to monitor the account, a purported duty owed to non-customers, enablement of imposter fraud, and fraudulent concealment.

#### 1. The Provisions of Article 4A Preempt Plaintiffs' Claims for Negligence

Article 4A of the UCC governs wire transfers. *See, e.g.*, *Binns v. Truist Bank*, 803 F. App'x 618, 622 n.2 (3d Cir. 2020); *Zhejiang Matrix SCM Co.*, 2024 WL 1096534, at *2. The UCC "will displace the common law where 'reliance on the common law would thwart the purposes of the Code.'" *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 779 (E.D. Pa. 2008) (citation omitted). Because Article 4A is a "comprehensive scheme" which governs wire transfers, it displaces the common law. *Fragale*, 480 F. Supp. 3d at 659 (citation omitted). Common law negligence claims which are predicated upon a wire transfer are thus preempted by the provisions of Article 4A. *See Zhejiang Matrix SCM Co.*, 2024 WL 1096534, at *3; *Shooter Pops LLC v. Wells Fargo Bank, N.A.*, 649 F. Supp. 3d 62, 66 (E.D. Pa. 2023) ("Article 4A of the UCC applies to claims arising out of wire transfers."). Preemption does not apply to claims which are premised on a withdrawal of funds after the transfer is complete, *see Shooter Pops LLC*, 649 F. Supp. 3d at 66, or on the opening of a fraudulent account, *see Fragale*, 480 F. Supp. 3d at 660.

Here, however Plaintiffs attempt to style their negligence claims, they are clearly premised on the Wire itself and Navy Federal's processing thereof. *See, e.g.*, Compl. ¶¶ 39, 42, 53, 59 (describing Plaintiffs' sending a wire and Navy Federal's processing thereof). Because Plaintiffs' claim is premised upon the Wire and its processing, Plaintiffs' common law negligence claims are

preempted by Article 4A of the UCC. And as described above, Plaintiffs fail to state a claim for relief under Article 4A.

To the extent that Plaintiffs argue that *Elkin Valley Baptist Church v. PNC Bank, N.A.*, 748 F. Supp. 3d 293 (W.D. Pa. 2024) supports a negligence in account opening claim, *see* Compl. ¶ 166, that claim fails for lack of support. Plaintiffs argue only that "Navy Federal opened the fraudster's account and knew the fraudster's true identity at the time the account was opened," Compl. ¶ 167, and "fail[ed] to comply with its own internal policies and with Federal [Know Your Customer] regulations," *id.* ¶ 168. Their allegations related to account opening are simply that Navy Federal would have known and verified the identity of the account holder when opening the account, and then established the account title and maintained the account. *See* Compl. ¶¶ 50–51. These are conclusory allegations that do not support any negligence in the account opening. Plaintiffs fail to identify *how* Navy Federal purportedly did not follow its own policies or federal regulations, nor do they allege how knowing the identity of an account holder when opening the account was negligent. In the *Elkin Valley* case, the court recited numerous allegations that it concluded supported a negligence claim which are notably absent here. *See Elkin Valley*, 748 F. Supp. 3d at 303–304, 347. Without specific allegations, *Elkin Valley* does not support Plaintiffs' claim.

To the extent Plaintiff's base their "negligence based on fraudulent concealment" claim (Count X) on Navy Federal's purported failure to freeze the funds, *see, e.g.*, Compl. ¶ 192 ("Plaintiffs contacted Navy Federal about the fraud and Navy Federal ignored those requests."), such a claim is barred by Section 606 of the Pennsylvania Banking Code. Section 606 requires a party making an adverse claim against funds and seeking to freeze them to provide a court order or indemnity to the financial institution which would freeze the funds. *See* 7 P.S. § 606 (a)–(b). Be-

cause Plaintiffs "did not obtain a court order or provide the indemnification required by Pennsylvania law," Plaintiffs "cannot hold [Navy Federal] liable for failing to freeze" the funds from the Wire. *Zhejiang Matrix*, 2024 WL 1096534, at *3; *see also Shooter Pops LLC*, 649 F. Supp. 3d at 67–68; *Chemalloy Co. v. Citibank, N.A.*, 609 F. Supp. 3d 370, 375–76 (E.D. Pa. 2022).

Plaintiffs' negligence claims must be dismissed.

**2. Even If Plaintiffs' Negligence Claim is Not Preempted, They Have Failed to State a Claim Because Navy Federal Owed Them No Duty**

To the extent the Court finds that the UCC does not preempt one or more of Plaintiffs' negligence claims, for example because they allege in conclusory fashion that Navy Federal opened the fraudster's account, *see* Compl. ¶¶ 164–169, they still fail because Navy Federal did not owe a duty to Plaintiffs. In order to maintain a negligence claim, Plaintiffs must show that Navy Federal owed them a duty; they cannot. Numerous decisions confirm that banks generally owe no duty to noncustomers and third parties. *See, e.g.*, *Adkins v. Sogliuzzo*, 625 F. App'x 565, 569 (3d Cir. 2015) ("Absent a special relationship, courts will typically bar claims of non-customers against banks." (citation omitted)); *Chemalloy Co*, 609 F. Supp. 3d at 377 ("[P]recedent supports the principle that banks do not owe any duty of care to noncustomers and/or third parties."); *Shooter Pops LLC*, 649 F. Supp. 3d at 68 (same); *Fragale*, 480 F. Supp. 3d at 661 ("[D]ecisions across the country, including within Pennsylvania, have held that banks do not owe any duty of care to noncustomers and/or third parties."); *Zhejiang Matrix SCM Co.*, 2024 WL 1096534, at *4 (same).

Here, Plaintiffs have made no allegation that they are customers of Navy Federal. To the contrary, they admit they are customers of Citizens Bank, *see, e.g.*, Compl. ¶ 13, and that they had no relation to the Navy Federal account at issue here, *see id.* Accordingly, Plaintiffs are merely

third-party noncustomers; Navy Federal owed them no duty. They cannot maintain a negligence claim.

Plaintiffs argue that *Elkin Valley* "expanded the duty to non-customers where the bank conduct 'foreseeably increased the risk' of fraud to" a non-customer. Compl. ¶ 179. But *Elkin Valley* is an outlier and arises from the Western District of Pennsylvania. Indeed, at least one other court has recognized that *Elkin Valley* "is [not] consensus authority within its own circuit." *Gemstone Foods, L.L.C. v. JPMorgan Chase Bank, N.A.*, No. 26-60049, 2026 WL 1507876, at *3 (5th Cir. May 29, 2026). As cited above, the Eastern District cases have consistently held that there is no duty running from banks to noncustomers. The Third Circuit has said the same. This Court should follow Third Circuit precedent and determine that Navy Federal owed no duty to Plaintiffs, and thus they cannot maintain a claim for negligence.

**3. Plaintiffs' Remaining Tort Claims for Aiding and Abetting Fraud and Conversion Fail**

Plaintiffs fail to state a claim as to Aiding and Abetting Fraud (Count XI) and Conversion (Count XII). Under Pennsylvania law, aiding and abetting fraud requires contemporaneous knowledge of fraud, which Navy Federal did not possess. And conversion requires an affirmative act by the tortfeasor. As the recipient of funds sent by Plaintiffs, Navy Federal simply processed funds. It did not take any affirmative steps supporting a claim for conversion.

**(a) Aiding and Abetting**

The Pennsylvania Supreme Court only recently recognized a tort for aiding and abetting fraud. *See Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 84 (Pa. 2023). To maintain a claim for aiding and abetting fraud, a plaintiff must show "(1) the existence of a fraud by a third party; (2) that defendant had 'actual knowledge of the fraud'; and (3) defendant provided 'substantial assistance or encouragement' to the party committing the fraud." *Van Horn, Metz & Co. v. JPMorgan*

*Chase & Co.*, No. 23-1693, 2024 WL 1142872, at *2 (E.D. Pa. Mar. 15, 2024) (quoting *Marion*, 288 A.2d at 79). The Pennsylvania Supreme Court specifically rejected the use of a "should have known" standard for the second prong, finding that "mere negligence is not sufficient to support aiding and abetting liability." *Marion*, 288 A.2d at 91–92. Among many other cases, the court favorably cited a federal opinion for the proposition that "[t]he fact that a bank should have recognized fraud does not mean that it had actual knowledge of fraud." *Id.* at 89 (quoting *In re TelexFree Sec. Litig.*, 357 F. Supp. 3d 70, 77 (D. Mass. 2019)). Conclusory allegations that a bank had knowledge or knew of fraud are insufficient evidence to support the second element. *Van Horn*, 2024 WL 1142872, at *2.

As described above, Plaintiffs' allegations that Navy Federal had knowledge of the fraudulent wire transfer are conclusory at best. They allege that "Navy Federal … had knowledge of suspicious discrepancies contained withing [*sic*] the Plaintiffs' wire transfer" and "had knowledge that the beneficiary name of JBL did not match the account number in Plaintiffs' wire." Compl. ¶¶ 202–03. These are mere conclusory statements that Navy Federal had knowledge without any additional facts to back that up. This is insufficient. Plaintiffs must support those legal conclusions with facts. They have not, and there is no indication that Navy Federal had actual knowledge of the fraud at the time it occurred. Because it did not have such knowledge, it cannot be liable for aiding and abetting fraud.

In addition, Plaintiffs fail to show that Navy Federal provided substantial assistance or encouragement to the fraudster. Merely providing "usual banking services" to a customer, even where that customer is committing a fraud, is insufficient to establish this prong. *Van Horn*, 2024 WL 1142872, at *3 (quoting *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 427 (S.D.N.Y. 2007)). Here, Navy Federal was the passive recipient of the Wire. At most, Plaintiffs allege that it was

providing "usual banking services" to the fraudster by processing the Wire. This is not enough to show substantial assistance or encouragement.

Simply put, Plaintiffs' "allegations do not demonstrate that [Navy Federal] had actual knowledge of the fraud and fail to explain how [Navy Federal] assisted or encouraged the fraud at all," *Van Horn*, 2024 WL 1142872, at *3, thus, the aiding and abetting claim must be dismissed.

**(b) Conversion**

To maintain a claim for conversion, a plaintiff must demonstrate "(1) the deprivation of another's right of property in, or use of possession of, a chattel, or other interference therewith, (2) without the owner's consent, and (3) without lawful justification." *Figueroa v. Point Park Univ.*, 553 F. Supp. 3d 259, 277 (W.D. Pa. 2021) (citation omitted); *see also Ockley v. Radnor Twp.*, 802 F. Supp. 3d 743, 764 (E.D. Pa. 2025). Conversion requires "an intent to exercise dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. Ct. 1987). "[T]here is no such thing as a reckless, negligent or accidental conversion." *Ockley*, 802 F. Supp. 3d at 764 (citation omitted).

Here, Plaintiffs have not demonstrated that Navy Federal deprived them of their property without lawful justification or that Navy Federal intended to exercise control over the funds in a way that is inconsistent with Plaintiffs' rights. To the contrary, Plaintiffs admit that they transferred the money. Plaintiffs took an affirmative action to transfer money from themselves to another entity. Navy Federal was simply the financial institution through which those funds were processed. In sending the Wire, Plaintiffs demonstrated an intent to pay those funds over. Navy Federal appropriately processed the Wire; they did not convert it from Plaintiffs.

**C. Permitting Plaintiffs to Amend the Complaint Would be Futile**

Plaintiffs' Complaint should be dismissed with prejudice and without leave to amend since amendment would be futile. "On a motion to dismiss, a complaint may be dismissed with prejudice

(and a plaintiff denied leave to amend) if amendment would be inequitable or futile." *Montanez-Johnson v. Chester Upland Sch. Dist.*, 762 F. Supp. 3d 433, 440 (E.D. Pa. 2025). Futility means that an amended complaint would still fail to state a claim upon which relief could be granted. *See id.*

Because of the privity requirement described in Section IV.A.2, *supra*, any claim under Article 4A would necessarily fail. *See also Zhejiang Matrix SCM Co.*, 2024 WL 1096534, at *4 ("[A]ny Article 4A claim would necessarily fail because Plaintiff lacks privity with Defendant."). And as described above in Sections IV.B.1–2, *supra*, Plaintiffs cannot maintain a negligence claim for the Wire, both because such a claim is preempted by Article 4A and because Navy Federal owed them no duty. Where any "re-fashioned negligence claim would necessarily fail to state a claim," amendment would be futile. *Id.* at *4. And Plaintiffs' remaining tort claims, aiding and abetting fraud, cannot stand because Plaintiff cannot demonstrate contemporaneous knowledge or the fraud or that Navy Federal inappropriately handled the funds at issue.

Navy Federal was entitled to rely on the account number when processing the Wire, and even if it were not, Plaintiffs can seek recovery only from their own bank, Citizens. Plaintiffs cannot plead facts to overcome those hurdles. Accordingly, the Court should dismiss this case with prejudice and without leave to amend.

## V. CONCLUSION

For all of the foregoing reasons, Navy Federal respectfully requests that this Court dismiss the Complaint with prejudice.

Dated: August 3, 2026

Respectfully submitted,

/s/ *Sean M. Craig*
Sean M. Craig (Pa. 331672)
TROUTMAN PEPPER LOCKE LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000
Sean.Craig@troutman.com

*Attorney for Defendant Navy Federal Credit Union*

**CERTIFICATE OF SERVICE**

I, Sean M. Craig, hereby certify that on August 3, 2026, I caused a copy of the foregoing to be filed through the Court's Electronic Filing System, which will provide service to all counsel of record.

*/s/ Sean M. Craig*
Sean M. Craig