IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HACE and VILLAS CARIBE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION; CITIZENS BANK, N.A.; and JOHN DOES 1-10,<br><br>Defendants. | Docket No. 2:26-cv-03695 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS**

**LAMB McERLANE PC**
Joel L. Frank (I.D. No. 46601)
Scot R. Withers (I.D. No. 84309)
Lauren M. Law (I.D. No. 320440)
24 East Market Street, P.O. Box 565
West Chester, PA 19381
(610) 430-8000
*Counsel for Plaintiffs*

Date: August 17, 2026

## Table of Contents

Page

I. INTRODUCTION .......... 1

II. STANDARD OF REVIEW .......... 4

III. ARGUMENT .......... 5

A. Plaintiffs Have Plausibly Alleged That Navy Federal Had Actual Knowledge of the Beneficiary Mismatch Under § 4A-207(b)(2) .......... 5

1. Pennsylvania's organizational-knowledge statute further counsels against resolving Navy Federal's knowledge as a matter of law at the pleading stage .......... 7

B. Article 4A's Chain-of-Refund Provisions Do Not Require Dismissal of Plaintiffs' § 4A-207 Allegations Against Navy Federal. .......... 8

C. Article 4A Does Not Preempt Plaintiffs' Negligence Claims Based on Conduct Outside the Funds Transfer. .......... 10

D. Plaintiffs Have Plausibly Alleged a Duty Based on Navy Federal's Affirmative Conduct in Creating and Administering the Account Used to Perpetrate the Fraud .......... 13

E. Navy Federal's Arguments Concerning the Pennsylvania Banking Code Do Not Require Dismissal of All Post-Transfer Negligence Allegations. .......... 16

F. Plaintiffs Have Plausibly Alleged Aiding and Abetting Fraud .......... 17

G. Plaintiffs Have Alleged a Cognizable Conversion Theory as to Funds or Fees Navy Federal Itself Retained .......... 20

H. Navy Federal's Request for Dismissal With Prejudice Should Be Rejected .......... 21

IV. CONCLUSION .......... 23

## Table of Authorities

Page(s)

### Cases

*Althaus ex rel. Althaus v. Cohen*,
756 A.2d 1166 (Pa. 2000) ....................13

*Approved Mortgage Corp. v. Truist Bank*,
106 F.4th 582 (7th Cir. 2024) ....................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................4

*Chemalloy Co., LLC v. Citibank, N.A.*,
609 F. Supp. 3d 370 (E.D. Pa. 2022) ....................16

*Connelly v. Lane Construction Corp.*,
809 F.3d 780 (3d Cir. 2016) ....................4

*Elkin Valley Baptist Church v. PNC Bank, N.A.*,
748 F. Supp. 3d 293 (W.D. Pa. 2024) .................... *passim*

*Fragale v. Wells Fargo Bank, N.A.*,
480 F. Supp. 3d 653 (E.D. Pa. 2020) .................... 1, 11-13

*Garrett v. Subaru of Am., Inc.*,
822 F. Supp. 3d 474 (D.N.J. 2026) .................... 22

*Grain Traders, Inc. v. Citibank, N.A.*,
160 F.3d 97 (2d Cir. 1998) ....................9

*Grayson v. Mayview State Hospital*,
293 F.3d 103 (3d Cir. 2002) ....................21-22

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ....................22

*Johnson v. City of Shelby*,
574 U.S. 10 (2014) ....................5, 10

*Marion v. Bryn Mawr Trust Co.*,
288 A.3d 76 (Pa. 2023) .................... 17-18

**Page(s)**

*Neitzke v. Williams*,
490 U.S. 319 (1989) ....4

*Pioneer Commercial Funding Corp. v. American Financial Mortgage Corp.*,
855 A.2d 818 (Pa. 2004) ....20

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) ....4

*Shonberger v. Oswell*,
530 A.2d 112 (Pa. Super. 1987) ....20

*Shooter Pops LLC v. Wells Fargo Bank, N.A.*,
649 F. Supp. 3d 62 (E.D. Pa. 2023) ....16

*Studco Building Systems US, LLC v. 1st Advantage Federal Credit Union*,
133 F.4th 264 (4th Cir. 2025) .... 7-8

*Van Horn, Metz & Co. v. JPMorgan Chase & Co.*,
No. 25-1838, 2026 WL 1103447 (3d Cir. Apr. 23, 2026) ....19

**Statutes**

7 P.S. § 606 .... 16-17

13 Pa.C.S. § 1202(b) .... 7-8

13 Pa.C.S. § 1202(f) ....8

13 Pa.C.S. § 4A-104(a) ....11

13 Pa.C.S. § 4A-207 .... *passim*

13 Pa.C.S. § 4A-402 .... 3, 9-10

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ....2, 4, 7, 19, 22

Federal Rule of Civil Procedure 9(b) ....4

Federal Rule of Civil Procedure 8 ....4, 6, 15

Restatement (Second) of Torts § 876(b) .... 17-18

# I. INTRODUCTION

The pending Motion to Dismiss filed by Defendant Navy Federal Credit Union ("Navy Federal") seeks dismissal of Plaintiff's claims based largely on the application of Article 4A of the Uniform Commercial Code, 13 Pa. C.S. §§ 4A101 et seq. to the wire transfer at issue. While Article 4A governs certain aspects of the transfer, it does not preclude liability for all of Navy Federal's alleged conduct before, during, and after the transfer. Navy Federal's Motion therefore applies Article 4A more broadly than Pennsylvania law permits.

Plaintiffs allege three materially distinct categories of conduct. First, Plaintiffs allege that Navy Federal accepted a payment order identifying JBL Construction Services, Inc. ("JBL") as the beneficiary with account number ending in 3826 as the beneficiary account, even though Navy Federal clearly possessed contemporaneous information establishing that the account bearing that account number belonged to someone else. Second, Plaintiffs allege that, before the wire transfer ever occurred, Navy Federal negligently opened and administered the account ultimately used to perpetrate the fraud despite, and in contravention of, its customer-identification obligations, internal policies, and fraud-prevention procedures. Third, Plaintiffs allege misconduct concerning Navy Federal's administration of the fraudulent account and the disposition of Plaintiffs' funds after the transfer was completed.

Article 4A does not displace all common-law claims merely because they arise in a factual setting involving a wire transfer. Rather, displacement turns on whether the common-law claim would impose rights, duties, or liabilities inconsistent with Article 4A's allocation of responsibility for conduct governed by the statute. Courts applying Pennsylvania law have expressly distinguished between conduct occurring in the course of a funds transfer and conduct occurring before or after it. *See Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp. 3d 653, 659-60 (E.D. Pa. 2020). Most significantly, *Elkin Valley Baptist Church v. PNC Bank, N.A.*, 748 F. Supp. 3d 293

(W.D. Pa. 2024), addressed materially similar allegations arising from a business-email-compromise ("BEC") scheme involving a construction payment diverted to a fraudulent account. *Id.* at 302. The *Elkin Valley* court rejected the beneficiary bank's Motion to Dismiss which made substantially similar arguments to those made here by Navy Federal and permitted both the Article 4A claim concerning the bank's knowledge of the beneficiary mismatch and the negligence claim concerning the opening and administration of the fraudulent account to proceed. *Id.* at 312-13, 352-54.

Accordingly, Plaintiffs' negligence claims that challenge independent conduct in the opening or maintenance of the recipient account prior to the transfer, or conduct occurring after completion of the transfer, are not displaced merely because the fraudulent scheme also involved a wire transfer. The Complaint does not merely infer knowledge on the part of Navy Federal from the existence of a mismatch. It instead alleges that Navy Federal itself opened the recipient account, collected and maintained the account holder's identity and account title, received a payment order naming JBL as beneficiary, and maintained wire-processing, Office of Foreign Assets Control ("OFAC"), Know Your Customer ("KYC"), Anti-Money Laundering ("AML"), fraud-monitoring, and account-management systems that contemporaneously possessed or displayed both sets of information. Compl. ¶¶ 48-52, 134-159. Plaintiffs further allege, upon information and belief, that those systems did, or should have, generated mismatch alerts, exception flags, discrepancy reports, or similar warnings and that Navy Federal personnel reviewed or became aware of the discrepancy before or contemporaneously with acceptance of the payment order. Compl. ¶¶ 136-159. Whether discovery ultimately substantiates those allegations is not the question presented under Rule 12(b)(6).

Navy Federal's separate "standing" argument likewise overstates Article 4A's privity requirement. Section 4A-402 establishes a chain-of-refund mechanism that generally requires an originator seeking repayment to proceed against its own bank. *Approved Mortg. Corp. v. Truist Bank*, 106 F.4th 582, 589 (7th Cir. 2024). But that remedial rule does not render Navy Federal's knowledge under § 4A-207(b)(2) legally irrelevant or prohibit adjudication of whether Navy Federal accepted a payment order that Article 4A declares incapable of acceptance. Instead, *Elkin Valley* rejected the same Article-wide privity theory, explaining that the privity requirement applies to the statutory refund mechanism and does not foreclose an originator from obtaining appropriate declaratory relief concerning the beneficiary bank's violation of § 4A-207(b)(2). 748 F. Supp. 3d at 316-17. Such determination bears directly upon the originator's refund rights against its own bank, which is also a defendant in this litigation.

Finally, Navy Federal's attempt to preempt all negligence claims because Plaintiffs' ultimate loss involved a wire transfer differs with the scope of Article 4A itself. Article 4A governs the series of transactions beginning with the originator's payment order and ending with acceptance by the beneficiary's bank. It does not regulate how Navy Federal opened the fraudulent account before Plaintiffs issued any payment order, nor does it comprehensively regulate Navy Federal's administration of that account and disposition of funds after the transfer was completed. Pennsylvania authority therefore permits common-law claims directed to conduct outside the funds transfer itself.

At minimum, Navy Federal's request for dismissal with prejudice is unjustifiable. Even if the Court concludes that any particular stated theory in the Complaint requires greater factual specificity or a different formulation of the relief requested, Plaintiffs must be afforded leave to amend.

## II. STANDARD OF REVIEW

To survive a motion under Rule 12(b)(6), a complaint need only contain sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In conducting that inquiry, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The question is not whether Plaintiffs have already proven their allegations, but whether the facts as plead raise a reasonable expectation that discovery will reveal evidence supporting their claims. *Id.*; *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). Particularly where facts concerning a defendant's internal systems, communications, procedures, and employees are uniquely within the defendant's possession, a plaintiff is not required to possess discovery-level evidentiary detail before discovery has begun. *Twombly*, 550 U.S. at 556.

Moreover, Federal Rule of Civil Procedure 9(b) expressly provides that knowledge and "other conditions of a person's mind may be alleged generally". Although such allegations remain subject to Rule 8's plausibility requirement, the Court must consider them in the factual context supplied by the Complaint rather than demand direct evidence of a defendant's state of mind at the pleading stage.

Finally, dismissal is not warranted merely because a complaint imperfectly identifies the legal theory supporting relief. Federal pleading rules require fair notice of the factual basis of the claim, not perfect statutory labeling. *See Johnson v. City of Shelby*, 574 U.S. 10, 11-12 (2014).

## III. ARGUMENT

### A. Plaintiffs Have Plausibly Alleged That Navy Federal Had Actual Knowledge of the Beneficiary Mismatch Under § 4A-207(b)(2).

Navy Federal's first argument depends upon § 4A-207(b)(1), but that subsection protects a beneficiary bank only where the bank "does not know that the name and number refer to different persons." 13 Pa.C.S. § 4A-207(b)(1). Where the beneficiary bank instead "knows that the name and number identify different persons," § 4A-207(b)(2) provides that, subject to an exception inapplicable here, "no person has rights as beneficiary" and "acceptance of the order cannot occur."

Plaintiffs expressly allege that Navy Federal had actual knowledge of the beneficiary name and beneficiary account number mismatch at the time of the wire transaction. Compl. ¶ 48, 52, 159, 203. The Complaint alleges that the May 31, 2024 payment order identified "JBL" as the beneficiary but designated account number ending in 3826. Compl. ¶¶ 37-45. Navy Federal had itself opened account 3826 for a different person or entity. Compl. ¶¶ 48-51, 141. In doing so, Navy Federal collected KYC information, verified the account holder's identity, established the legal title of the account, assigned the account number, and maintained that information within its own banking systems. Compl. ¶¶ 48-51, 141. Thus, before Plaintiffs' wire ever arrived, Navy Federal possessed the identity of the person or entity associated with account 3826.

When the payment order arrived, Navy Federal received an instruction identifying "JBL" as beneficiary while identifying account 3826 as the destination account. Compl. ¶¶ 37-45, 135. The Complaint further alleges that Navy Federal maintained wire-processing, sanctions-screening, KYC, AML, fraud-monitoring, and account-management systems that provided simultaneous

access to the beneficiary information contained in the incoming payment order and the legal account-holder information maintained by Navy Federal. Compl. ¶¶ 134-159. Plaintiffs allege that those systems identified the discrepancy, generated alerts or exception records, and/or caused Navy Federal personnel responsible for processing, fraud prevention, compliance, or supervision to become aware that the identifiers referred to different persons before or contemporaneously with acceptance. Compl. ¶¶ 139-159.

The decision in *Elkin Valley* is particularly instructive. There, as here, a fraudster diverted a construction payment through false payment instructions to an account at the beneficiary bank whose account holder differed from the beneficiary named in the payment order. 748 F. Supp. 3d at 303-05. The beneficiary bank argued that allegations of actual knowledge were conclusory because the plaintiff could not identify at the pleading stage when or how particular employees learned of the mismatch. *Id.* at 321. The court rejected that argument because the bank had opened the recipient account and therefore received information identifying its account holder, and later received a payment order containing a different beneficiary name, therefore the allegations plausibly supported the inference that the bank possessed the relevant information. *Id.* at 333-36.

The same reasoning applies here, with even more detailed allegations concerning Navy Federal's internal systems. Because Plaintiffs are outsiders to Navy Federal, they cannot reasonably be expected (before discovery) to identify which Navy Federal employee reviewed a particular exception report, the precise software through which the mismatch was displayed, or the internal routing of a fraud alert. Those matters reside uniquely within Navy Federal's records and control. Rule 8 does not require Plaintiffs to plead evidence that can only be obtained through discovery.

Navy Federal relies heavily on *Studco Building Systems US, LLC v. 1st Advantage Federal Credit Union*, 133 F.4th 264 (4th Cir. 2025). *Studco* held, under Virginia's enactment of Article 4A, that "knowledge" for purposes of § 4A-207 means actual knowledge rather than constructive or imputed knowledge. *Id.* at 273. Plaintiffs do not contend otherwise. The Complaint expressly alleges "actual knowledge". Compl. ¶ 48, 52, 159, 203.

More importantly, *Studco* arose from a materially different procedural posture, with the Fourth Circuit reviewing the district court's findings following a bench trial on a developed evidentiary record. *Id.* at 267-78. On the evidentiary record before it, the Fourth Circuit concluded that automated reports reflecting mismatches, which no employee reviewed before the transfers were processed, were insufficient to establish the beneficiary bank's actual knowledge. *Id.* at 273-75.

Here, by contrast, the Court is deciding a Rule 12(b)(6) motion before Plaintiffs have obtained Navy Federal's wire records, alert logs, fraud-monitoring records, OFAC and AML records, internal communications, or testimony from the employees who handled the transaction. And unlike a complaint alleging merely that an automated system theoretically could have detected a mismatch, Plaintiffs allege that Navy Federal's systems did identify the discrepancy and that Navy Federal personnel reviewed, observed, received, or otherwise became aware of it before or contemporaneously with acceptance. Compl. ¶¶ 134-160.

Whether those allegations can ultimately be proven is appropriately tested after discovery, not resolved against Plaintiffs on the pleadings.

**1. Pennsylvania's organizational-knowledge statute further counsels against resolving Navy Federal's knowledge as a matter of law at the pleading stage.**

Navy Federal's analysis also focuses almost exclusively on § 1202(b), which defines

"knowledge" as actual knowledge, without adequately addressing § 1202(f), which specifically governs when information received by an organization becomes effective for a particular transaction.

Under 13 Pa.C.S. § 1202(f), notice or knowledge received by an organization is effective for a particular transaction when it is brought to the attention of the individual conducting that transaction or, critically, "from the time it would have been brought to the individual's attention if the organization had exercised due diligence." An organization exercises due diligence when it maintains reasonable routines for communicating significant information to the person conducting the transaction and reasonably complies with those routines. *Id. Elkin Valley* recognized the significance of that provision to § 4A-207. 748 F. Supp. 3d at 310-11, 320, 326-29. It reasoned that determining a beneficiary bank's knowledge requires consideration not merely of whether some employee subjectively compared two names, but also of the statutory rules governing organizational receipt and dissemination of information. 748 F. Supp. 3d at 336-43.

Navy Federal's invocation of *Studco* does not warrant dismissal because the Complaint does not rely merely on constructive or imputed institutional knowledge. It instead alleges that Navy Federal's systems identified the mismatch and, more importantly, that Navy Federal personnel reviewed, observed, received, or otherwise became aware of the discrepancy before Navy Federal accepted and credited the payment order. Compl. ¶¶ 134-160. Thus, *Studco* does not justify dismissal of a complaint that expressly alleges that Navy Federal's systems possessed both identifiers, generated discrepancy information, and communicated or made that information available to personnel responsible for the transaction. Compl. ¶¶ 139-159.

### B. Article 4A's Chain-of-Refund Provisions Do Not Require Dismissal of Plaintiffs' § 4A-207 Allegations Against Navy Federal.

Navy Federal next argues that Plaintiffs lack "standing" because they were not Navy

Federal customers. That argument conflates two separate questions: (1) whether Plaintiffs may demand a statutory refund directly from Navy Federal; and (2) whether Navy Federal's rights and conduct under § 4A-207(b)(2) may be adjudicated in this action, which includes the originating bank as a defendant.

Navy Federal's privity argument does not negate Plaintiffs' allegations that Navy Federal violated § 4A-207(b)(2) by accepting the payment order with actual knowledge that the beneficiary name and account number identified different persons. Whether Article 4A affords Plaintiffs a direct monetary remedy against Navy Federal presents a distinct question concerning the statutory allocation of recovery rights and does not establish that Navy Federal's acceptance complied with § 4A-207(b)(2).

Section 4A-402 generally establishes a chain-of-refund procedure under which a sender that paid an order that it was not obligated to pay seeks repayment from the receiving bank to which it made payment. Courts accordingly have recognized a privity requirement for the statutory "money back guarantee." *See Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 101-02 (2d Cir. 1998); *Approved Mortgage Corp. v. Truist Bank*, 106 F.4th 582, 589-92 (7th Cir. 2024).

However, Section 4A-402 does not follow that the originator is prohibited from litigating whether the beneficiary bank violated § 4A-207(b)(2). *Elkin Valley* considered and rejected precisely that argument. 748 F. Supp. 3d at 318, 352-54. The court explained that *Grain Traders* and the decisions following it concern the repayment provisions of § 4A-402 and should not be transformed into an Article-wide privity requirement. *Elkin Valley*, 748 F. Supp. 3d at 317-319. Article 4A itself recognizes rights involving parties who are not in contractual privity. *Id.*

The distinction is especially important where, as in this matter, both the originator's bank and the beneficiary bank are parties to the same action. If Navy Federal knew that the beneficiary

name and account number identified different persons at the time of the wire, § 4A-207(b)(2) provides that acceptance could not occur. That determination bears directly upon Plaintiffs' obligation to pay their own bank and their corresponding refund rights under § 4A-402. *See* Compl. ¶¶ 72-92, 131-162.

Plaintiffs' Complaint seeks judgment against Defendants and "such other relief as the Court deems just and proper." To the extent Count V's request for relief is construed as seeking a direct statutory refund from Navy Federal that Article 4A requires to proceed through the chain of payment, the appropriate response is not dismissal of the underlying § 4A-207(b)(2) controversy. The Court may construe the claim as seeking declaratory relief concerning Navy Federal's knowledge and the validity of its acceptance, particularly because Defendant Citizens Bank, N.A., Plaintiffs' originating bank, is already before the Court and Plaintiffs have separately asserted their statutory refund rights against it. *See* Compl. ¶¶ 72-92, 131-162.

Federal pleading rules do not require dismissal merely because Plaintiffs imperfectly characterized the form of relief flowing from otherwise adequately pleaded facts. *See Johnson*, 574 U.S. at 11. At minimum, if the Court determines that Count V must expressly request declaratory relief rather than damages directly from Navy Federal, Plaintiffs should be granted leave to simply amend to clarify that relief.

### C. Article 4A Does Not Preempt Plaintiffs' Negligence Claims Based on Conduct Outside the Funds Transfer.

Navy Federal next asks the Court to dismiss Counts VI through X wholesale on the theory that Article 4A preempts any negligence claim associated with Plaintiffs' loss. That argument applies Article 4A far beyond its statutory and intended scope.

The Pennsylvania Commercial Code defines a "funds transfer" as the "series of transactions, beginning with the originator's payment order, made for the purpose of making

payment to the beneficiary of the order." 13 Pa.C.S. § 4A-104(a). The transfer is completed when the beneficiary's bank accepts a payment order for the benefit of the beneficiary. Article 4A therefore governs the rights and obligations arising during that defined transactional period only. It does not occupy the entire field whenever a wire transfer happens to form part of the factual background of a dispute.

The Eastern District of Pennsylvania recognized precisely that distinction in *Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp. 3d 653 (E.D. Pa. 2020). There, the plaintiff alleged that a fraudster opened an account at the beneficiary bank, fraudulently induced a wire transfer into that account, and subsequently withdrew the funds. *Id.* at 657-58. The court held that Article 4A governed conduct occurring between issuance of the payment order and the beneficiary bank's acceptance, but did not preempt negligence claims directed to the bank's opening of the fraudulent account before the transfer or its permitting withdrawals after the transfer was complete. *Id.* at 659-60.

*Elkin Valley* subsequently applied the same distinction to materially similar BEC allegations. 748 F. Supp. 3d at 345-47. The court expressly rejected the beneficiary bank's argument that Article 4A preempted the negligence claim merely because a wire transfer was at the "heart" of the overall dispute. *Id.* at 344. Rather, the court examined the conduct underlying the common-law claim and held that Article 4A did not displace theories directed to the bank's account-opening and account-management conduct outside the statutorily defined funds transfer. *Id.* at 344-47.

Here, Count VI concerns Navy Federal's conduct in opening and establishing the recipient account before Plaintiffs ever issued the May 31, 2024 payment order. Compl. ¶¶ 163-170. Count VII concerns Navy Federal's administration and monitoring of an account allegedly used to receive

an anomalous $809,000 payment and permit the subsequent disposition of fraudulently obtained funds. Compl. ¶¶ 171-176. Count IX likewise alleges that Navy Federal's account-management practices enabled an account under the control of an imposter to function as the instrumentality through which the fraud was accomplished. Compl. ¶¶ 184-189. And Count X includes allegations concerning Navy Federal's conduct after Plaintiffs reported the fraud, including its handling of the account and transferred funds after the Article 4A transfer was complete. Compl. ¶¶ 190-199.

Those theories are analytically distinct from Plaintiffs' allegation that Navy Federal should have rejected the incoming payment order because the beneficiary name did not match the account number. That conduct is instead governed by § 4A-207 and is addressed in Count V. Plaintiffs do not seek to use negligence law to replace § 4A-207's carefully drawn actual-knowledge standard with a "should have known" standard governing Navy Federal's acceptance of the payment order.

Rather, Plaintiffs' negligence claims concern independent conduct outside the transfer itself, including Navy Federal's creation and administration of the account that made the fraud possible and its conduct concerning the account and funds after the transfer had been completed. Article 4A supplies no rules governing whether Navy Federal exercised reasonable care when opening that account, whether it reasonably administered the account before Plaintiffs issued their payment order, or whether it acted reasonably in connection with withdrawals and disposition of funds after acceptance. Applying ordinary negligence principles to that conduct therefore does not conflict with any right, duty, or allocation of risk established by Article 4A.

Indeed, Navy Federal's own authorities recognize this limitation. Navy Federal acknowledges that *Fragale* permits claims based upon "the opening of a fraudulent account" and claims "premised on a withdrawal of funds after the transfer is complete." Def.'s Br. at 10; *Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp. 3d 653, 659-60 (E.D. Pa. 2020). Navy Federal's assertion

that Plaintiffs' claims nevertheless are all "clearly premised on the Wire itself" simply disregards the allegations of the Complaint. Def.'s Br. at 10.

To the extent a particular negligence theory would impose a common-law obligation inconsistent with § 4A-207 for Navy Federal's decision to accept that payment order, Plaintiffs do not contend that common law may supplant Article 4A. Some allegations incorporated into Counts VI through X also reference Navy Federal's processing of the May 31 payment order. *See* Compl. ¶¶ 175,182, 187-188, 195. But the presence of some allegations concerning the wire does not transform legally distinct pre-transfer and post-transfer conduct into conduct governed by Article 4A. At most, the Court may limit the negligence claims to conduct occurring outside the Article 4A transfer itself. Dismissal of those claims in their entirety is unwarranted.

### D. Plaintiffs Have Plausibly Alleged a Duty Based on Navy Federal's Affirmative Conduct in Creating and Administering the Account Used to Perpetrate the Fraud.

Navy Federal alternatively argues that the negligence claims fail because banks ordinarily owe no duty to persons who are not their customers. Plaintiffs do not dispute that Pennsylvania courts generally begin with that rule. But Navy Federal treats the general rule as categorical and ignores the circumstances in which Pennsylvania law recognizes a duty arising from a defendant's own affirmative, risk-creating conduct.

The Pennsylvania Supreme Court determines the existence of a common-law duty by considering: (1) the relationship between the parties; (2) the social utility of the defendant's conduct; (3) the nature and foreseeability of the risk imposed and consequences incurred; (4) the consequences of imposing a duty upon the defendant; and (5) the overall public interest in the proposed solution. *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000). No single factor is dispositive. *Id.*

*Elkin Valley* applied those principles in the precise context presented here and rejected the proposition that non-customer status necessarily forecloses a negligence claim against a beneficiary bank. 748 F. Supp. 3d at 346-55. The court distinguished decisions involving allegations that a bank merely failed to protect a stranger from an independently created danger from allegations that the bank itself took affirmative steps that foreseeably increased the risk of the fraud. *Id.* Where the bank allegedly created and maintained the account that served as the vehicle for BEC fraud and failed to exercise reasonable care in doing so, the court concluded that Pennsylvania law could recognize a duty notwithstanding the absence of a traditional customer relationship. *Id.* at 352.

Likewise, Navy Federal affirmatively created the financial instrumentality necessary to complete the scheme, the fraudster's account 3826. Navy Federal chose to open the account, identified and verified the person or entity controlling it, assigned the account number, established its title, maintained the account, and possessed information concerning the account's known profile and expected activity. Compl. ¶¶ 48-51, 63-64, 141, 147, 163-175. Navy Federal therefore allegedly occupied a materially different position from a stranger who merely failed to rescue Plaintiffs from a risk created entirely by someone else.

The foreseeability alleged here is similarly substantial. Plaintiffs allege that by May 2024, BEC and payment-diversion fraud were widespread and known risks to financial institutions; that federal regulators and banking-industry authorities had repeatedly warned institutions concerning account-substitution and wire-diversion schemes; and that banks maintained KYC, AML, transaction-monitoring, anomaly-detection, and fraud-escalation procedures specifically directed to those risks. Compl. ¶¶ 15, 65-68, 134-157. The Complaint further alleges that the recipient account was not an account ordinarily receiving construction-related progress payments of this

magnitude, that the $809,000 transfer was anomalous in light of the account's profile, and that Navy Federal nevertheless permitted the funds to be received and subsequently withdrawn. Compl. ¶¶ 63-64, 147-148, 169, 175. Those allegations must be accepted as true at the pleading stage.

Navy Federal responds that Plaintiffs do not yet know precisely what occurred when account 3826 was opened. However, the identity of Navy Federal's customer, the account-opening documents, the representations made to Navy Federal during onboarding, the KYC information obtained, the account's stated purpose, its expected transaction activity, its history before May 31, 2024, any fraud or AML alerts, and the disposition of Plaintiffs' funds are all information solely within Navy Federal's possession.

Rule 8 does not require a non-customer fraud victim to possess the beneficiary bank's confidential account file before discovery begins. Plaintiffs have alleged what they presently can know, namely, that Navy Federal opened and controlled the account; Navy Federal knows the identity of the person or entity that opened it; the account was then used to receive Plaintiffs' $809,000 construction payment through an impersonation scheme; the incoming payment was inconsistent with the account holder identified in Navy Federal's own records; the transaction allegedly was inconsistent with the account's ordinary profile and activity; and Navy Federal thereafter permitted the fraudster to obtain the funds. *See* Compl. ¶¶ 34-53, 63-64, 141-159, 169, 175. Plaintiffs should not be denied that discovery merely because the very information necessary to provide additional detail is presently controlled by the defendant accused of negligent account administration.

Navy Federal's attempt to distinguish *Elkin Valley* because that complaint contained additional allegations regarding irregularities in the opening of the fraudulent account goes to the ultimate strength of the claim, not the categorical existence of a duty. The relevant point at this

stage is that Pennsylvania law does not impose an absolute no-duty rule simply because Plaintiffs were not Navy Federal customers. The existence and scope of the duty must be evaluated in light of the affirmative conduct and foreseeable risk actually alleged.

At minimum, if the Court concludes that Count VI requires additional factual allegations concerning the circumstances under which account 3826 was opened, the appropriate remedy is leave to amend following development of information presently unavailable to Plaintiffs, not dismissal with prejudice of every negligence theory directed to Navy Federal's conduct outside the Article 4A transfer.

### E. Navy Federal's Arguments Concerning the Pennsylvania Banking Code Do Not Require Dismissal of All Post-Transfer Negligence Allegations.

Navy Federal separately relies on 7 P.S. § 606 to attack Count X, arguing that Plaintiffs could not require Navy Federal to freeze the recipient account without providing the court order or indemnity contemplated by Pennsylvania's adverse-claim statute. Even accepting Navy Federal's construction of § 606, that argument is considerably narrower than Navy Federal suggests.

Section 606 addresses when a financial institution must recognize an adverse claim to a deposit account and restrict its customer's access to funds based upon that claim. *Chemalloy Co., LLC v. Citibank, N.A.*, 609 F. Supp. 3d 370, 375-77 (E.D. Pa. 2022). Decisions applying the provision have therefore rejected attempts to impose liability on a bank merely because, after receiving notice from a third-party claiming ownership of funds, the bank declined to freeze its customer's account in the absence of the statutorily required process. *Id. at* 375-79; See, e.g., *Shooter Pops LLC v. Wells Fargo Bank, N.A.*, 649 F. Supp. 3d 62, 67-68 (E.D. Pa. 2023). Accordingly, Plaintiffs need not contend that a telephone call or fraud report, standing alone, automatically imposed an unconditional statutory obligation upon Navy Federal to freeze its

customer's account.

But Count X is not material to the viability of Plaintiffs' independent pre-transfer negligence theories, and § 606 does not retroactively immunize conduct occurring before an adverse claim was asserted. It does not govern how Navy Federal opened the account, how it administered the account before the fraud was reported, whether unusual post-acceptance transactions were appropriately monitored, or whether Navy Federal's own fraud or compliance procedures independently required action once suspicious activity became apparent.

Thus, even if the Court concludes that Plaintiffs cannot premise negligence liability solely upon Navy Federal's failure to honor Plaintiffs' request to freeze account 3826 without compliance with § 606, that conclusion supplies no basis to dismiss Counts VI through IX and does not justify Navy Federal's requested dismissal of the Complaint with prejudice.

The appropriate inquiry is claim and conduct specific. Article 4A governs Navy Federal's <u>acceptance</u> of the payment order. Section 606 may constrain a theory based solely upon Navy Federal's refusal to honor a noncustomer's adverse claim to deposited funds. Neither statutory scheme grants Navy Federal blanket immunity for its allegedly negligent conduct in creating and administering the account outside those statutory circumstances.

### F. Plaintiffs Have Plausibly Alleged Aiding and Abetting Fraud.

Navy Federal next seeks dismissal of Count XI on the ground that Plaintiffs have not adequately alleged either actual knowledge of the underlying fraud or substantial assistance. At the pleading stage, however, the Complaint contains sufficient factual allegations to permit the claim to proceed.

Pennsylvania recognizes aiding and abetting fraud under Restatement (Second) of Torts § 876(b). *Marion v. Bryn Mawr Trust Co.*, 288 A.3d 76, 84-94 (Pa. 2023). The claim requires: (1) an

underlying fraud committed by a third party; (2) the defendant's actual knowledge of that fraud; and (3) substantial assistance or encouragement to the fraudfeasor. *Id.* at 79.

There is no dispute that the Complaint adequately alleges an underlying fraud. John Does 1-10 allegedly infiltrated JBL's email system, impersonated JBL, transmitted false payment instructions directing Plaintiffs to account 3826, and induced Plaintiffs to send approximately $809,000 to an account controlled by the fraudsters. Compl. ¶¶ 10, 26-45, 201, 2017-225.

The remaining elements must be considered in light of the detailed allegations concerning Navy Federal's knowledge and conduct. Plaintiffs do not rely merely upon an assertion that Navy Federal "should have known" fraud was occurring. As discussed above, the Complaint alleges that Navy Federal opened and maintained account 3826 and possessed the verified identity and account title of the person or entity controlling it. Compl. ¶¶ 48-51, 141. Navy Federal then received a payment order identifying an entirely different entity, JBL, as the beneficiary. Compl. ¶¶ 37-45, 135.

Plaintiffs further allege that Navy Federal's wire-processing, account-management, OFAC, KYC, AML, and fraud-monitoring systems contemporaneously displayed or made available both the beneficiary information in the incoming payment order and the account-holder information associated with account 3826; that those systems identified or flagged the discrepancy; and that Navy Federal personnel responsible for wire processing, compliance, fraud review, or supervision reviewed, observed, received, or otherwise became aware of the mismatch before or contemporaneously with Navy Federal's acceptance of the transfer. Compl. ¶¶ 134-159.

The Complaint pleads more than Navy Federal's knowledge of a technical discrepancy between the beneficiary name and beneficiary account number. Taken together—the alleged mismatch, the size and anomalous nature of the transfer, Navy Federal's alleged fraud and AML

alerts, its knowledge of the account holder and account profile, and its alleged review and awareness of those circumstances—support, at the pleading stage, a plausible inference that Navy Federal had actual knowledge of the underlying fraud. Compl. ¶¶ 48-64, 134-160, 200-205.

At the pleading stage, those allegations support a plausible inference of actual knowledge. Whether discovery will establish that inference is a different question.

Navy Federal relies on *Van Horn, Metz & Co. v. JP Morgan Chase & Co.*, No. 25-1838, 2026 WL 1103447 (3d Cir. Apr. 23, 2026), but that nonprecedential decision does not compel dismissal here. *Van Horn* confirms that a bank's provision of ordinary banking services, without plausible allegations that it actually knew of the underlying fraud, does not constitute aiding and abetting. *Id.* at *1. Plaintiffs do not dispute that basic proposition.

Here, however, Plaintiffs allege more than the passive provision of ordinary banking services to an otherwise unremarkable customer. Plaintiffs allege that Navy Federal possessed contemporaneous information revealing that a payment order naming JBL was being credited to an account Navy Federal knew belonged to someone else; that its own systems identified the discrepancy; and that Navy Federal nevertheless credited the funds to the mismatched account and permitted the fraudster to obtain the proceeds. Compl. ¶¶ 48-53, 134-161, 169, 175, 202-204. If proven, those allegations would permit a factfinder to conclude that Navy Federal knowingly provided the banking mechanism necessary to complete the fraud despite contemporaneous awareness of circumstances revealing the fraudulent diversion.

Rule 12(b)(6) does not permit the Court to resolve disputed factual issues in Navy Federal's favor before Plaintiffs obtain Navy Federal's internal wire, fraud, compliance, and account records. Count XI therefore should not be dismissed.

### G. Plaintiffs Have Alleged a Cognizable Conversion Theory as to Funds or Fees Navy Federal Itself Retained.

Navy Federal also seeks dismissal of Count XII on the ground that it merely processed Plaintiffs' transfer and did not intentionally exercise dominion over Plaintiffs' property.

Under Pennsylvania law, conversion is the deprivation of another's right of property in, or use or possession of, property without lawful justification. *Pioneer Commercial Funding Corp. v. American Financial Mortgage Corp.*, 855 A.2d 818, 827 (Pa. 2004). Although conversion requires an intentional exercise of dominion or control, it does not require an intent to harm the plaintiff or knowledge that the exercise of control is wrongful. *Shonberger v. Oswell*, 365 530 A.2d 112, 114 (Pa. Super. 1987). Rather, liability may arise where the defendant intends to exercise dominion or control that is, in fact, inconsistent with the plaintiff's rights. *Id.* Money may be the subject of conversion where the claim concerns specific, identifiable funds. *Id.*

In Count XII, Plaintiffs allege that the $809,000 transferred on May 31, 2024, constituted a specific, identifiable fund diverted through a discrete wire transaction. Compl. ¶¶ 39-45, 208-215. John Does 1-10 exercised dominion over those funds by obtaining, transferring, concealing, and dissipating them. Compl. ¶¶ 209-210.

As to Navy Federal, Plaintiffs allege more narrowly that Navy Federal received and controlled the transferred funds and retained transaction fees, charges, or other portions of the proceeds derived from the fraudulent transaction despite the circumstances alleged elsewhere in the Complaint. Compl. ¶¶ 211-212, 261. To the extent Navy Federal itself retained identifiable fees or other portions of Plaintiffs' transferred funds after acquiring actual knowledge that the transaction resulted from fraud, Plaintiffs have alleged an exercise of dominion over specific property inconsistent with Plaintiffs' rights.

Navy Federal's argument treats Count XII as though Plaintiffs alleged that Navy Federal

converted the entire $809,000 simply by crediting its customer's account. Plaintiffs need not defend the claim that broadly. The fact that Navy Federal initially received funds pursuant to a payment order does not resolve whether Navy Federal thereafter retained identifiable portions of those funds for itself despite knowledge that they were derived from the fraudulent diversion.

Discovery concerning the disposition of the $809,000, the fees assessed or retained by Navy Federal, the timing of Navy Federal's knowledge, and the disposition of funds following that knowledge will determine the ultimate scope of the conversion claim.

Accordingly, Count XII should not be dismissed. At minimum, Plaintiffs have alleged a plausible conversion theory as to specific funds, fees, or proceeds Navy Federal itself intentionally retained after its alleged knowledge of the fraud.

**H. Navy Federal's Request for Dismissal With Prejudice Should Be Rejected.**

Finally, Navy Federal asks the Court not merely to dismiss Plaintiffs' claims, but to do so with prejudice before discovery even commenced. There is no basis for that extraordinary request. Also, Navy Federal repeatedly requests dismissal of the "Complaint" in its entirety. That relief is facially overbroad. Numerous claims in the Complaint are asserted exclusively against Defendant Citizens Bank, N.A. and/or John Does 1-10, and Navy Federal neither has standing to seek their dismissal nor presents any argument addressing their sufficiency. Moreover, Navy Federal's Motion fails to include any arguments at all regarding the dismissal of Count XVIII for unjust enrichment, which was plead against all Defendants. Accordingly, even if the Court were to accept Navy Federal's arguments, the relief available on this Motion is limited to dismissal of the particular claims asserted against Navy Federal, at worst. However, if the Court is receptive to Navy Federal's arguments, the more appropriate relief is amendment.

The Third Circuit has repeatedly instructed that, when a complaint is vulnerable to

dismissal under Rule 12(b)(6), a district court generally must permit a curative amendment unless amendment would be inequitable or futile. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002). Futility exists only where the amended pleading still could not state a claim as a matter of law. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citing *Garrett v. Subaru of Am., Inc.*, 822 F. Supp. 3d 474, 479 (D.N.J. 2026)).

Navy Federal cannot satisfy the Rule 12(b)(6) standard. First, the principal deficiency Navy Federal identifies concerning Count V is the alleged absence of sufficiently particular facts demonstrating actual knowledge. But Plaintiffs have already pleaded facts concerning Navy Federal's internal systems, account records, mismatch information, alerts, and employee awareness. *See* Compl. ¶¶ 134-160. If the Court nevertheless determines that additional specificity is required, amendment plainly would not be futile because discovery or additional investigation may permit Plaintiffs to identify further facts concerning Navy Federal's actual receipt and review of the mismatch information.

Second, Navy Federal's contention that Article 4A categorically bars the negligence claims is legally incorrect for the reasons discussed above. Pennsylvania authority recognizes that Article 4A does not preempt common-law claims directed to conduct occurring outside the funds transfer itself. At minimum, Plaintiffs could amend to more expressly distinguish Navy Federal's pre-transfer account-opening and administration conduct from conduct occurring during the payment order itself. *See* Compl. ¶¶ 163-199.

Third, many of the facts relevant to Plaintiffs' claims are peculiarly within Navy Federal's sole possession. Plaintiffs presently do not possess Navy Federal's account-opening records for account 3826, KYC documents, account profile, expected transaction activity, wire-processing records, internal exception reports, fraud alerts, AML records, OFAC records, internal

communications, withdrawal history, or records identifying which employees reviewed the transaction. Navy Federal cannot rightfully simultaneously withhold relevant information from Plaintiffs to establish futility on the theory that Plaintiffs could never plead additional facts concerning it.

The same is true of the aiding-and-abetting and conversion theories. If the Court determines that either claim requires greater factual specificity regarding the timing of Navy Federal's knowledge, the services provided after acquiring that knowledge, or the particular funds or fees retained by Navy Federal, those are potentially curable pleading issues rather than inherent legal defects. *See* Compl. ¶¶ 200-215

Finally, even if the Court agrees with Navy Federal that Plaintiffs cannot obtain a direct statutory refund from Navy Federal under Article 4A, Plaintiffs can amend Count V to expressly seek declaratory relief concerning whether Navy Federal possessed actual knowledge of the beneficiary mismatch and whether acceptance could occur under § 4A-207(b)(2). That determination directly bears upon Plaintiffs' statutory refund claim against Defendant Citizens Bank, N.A., which is already a party to this action. *See* Compl. ¶¶ 72-92, 131-162.

Navy Federal therefore has not demonstrated that amendment would be futile. If the Court finds any count insufficiently pleaded, Plaintiffs respectfully request leave to amend.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Navy Federal Credit Union's Motion to Dismiss. In the alternative, to the extent the Court determines that any claim requires additional factual allegations or clarification of the relief sought, Plaintiffs respectfully request leave to file an amended complaint.

WHEREFORE, Plaintiffs HACE and Villas Caribe LLC respectfully request that this Court deny Navy Federal Credit Union's Motion to Dismiss. In the alternative, should the Court determine that any claim is insufficiently pleaded, Plaintiffs respectfully request leave to amend the Complaint.

Respectfully submitted,

**LAMB McERLANE PC**

Date: August 17, 2026

By: ______________________________

Joel L. Frank (I.D. No. 46601)
Scot R. Withers (I.D. No. 84309)
Lauren M. Law (I.D. No. 320440)
24 East Market Street, P.O. Box 565
West Chester, PA 19381
(610) 430-8000
*Attorneys for Plaintiffs*