**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HACE and VILLAS CARIBE, LLC,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**NAVY FEDERAL CREDIT UNION, CITIZENS BANK, N.A., and JOHN DOES 1-10**<br>**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 26CV3695** |

**MEMORANDUM OPINION**

Plaintiffs HACE and Villas Caribe, LLC (collectively, "Plaintiffs") are two affiliated entities with the shared goal of building housing for low-income families. Plaintiffs fell victim to a business email compromise scam in which a hacker infiltrated the email system of their contractor and requested that Plaintiffs transfer $809,000 to an account the hacker owned. The hacker monitored the contractor's emails to understand when money might be coming in, created a bank account at Navy Federal Credit Union, and sent wire instructions to Plaintiffs to send the money—all unbeknownst to Plaintiffs or their contractor. Plaintiffs, seeking to recover the $809,000 they lost, have sued Defendant Navy Federal Credit Union ("Navy Federal"), alleging a violation of 13 Pa. C.S. § 4A207 (misdescription of beneficiary), multiple claims of negligence, aiding and abetting fraud, and conversion. Navy Federal now moves to dismiss the claims against it on the grounds that Plaintiffs have failed to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, Navy Federal's motion shall be granted.

## I. FACTUAL BACKGROUND

In evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the factual and legal elements of a claim are separated, and the well-pleaded facts of a complaint are

accepted as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The following facts are taken from Plaintiffs' Complaint. Plaintiff HACE is a non-profit organization that invests in and develops low-income housing. Plaintiff Villas Caribe is a for-profit affiliate of HACE. Together, Plaintiffs have been engaged in the construction and updating of a low-income housing facility called "Villas del Caribe" in Philadelphia, Pennsylvania. Plaintiffs entered into a construction agreement with JBL Construction Services, Inc. ("JBL") as the general contractor on the project. Plaintiffs made progress payments to JBL at various stages of the project. Throughout the project, JBL changed banks multiple times, so when JBL informed Plaintiffs that it changed banks to Navy Federal, Plaintiffs were not suspicious.

In the background, an unknown hacker infiltrated JBL's email systems through a scam commonly referred to as a business email compromise. Once within JBL's email systems, the hacker examined JBL's emails to determine when monetary transfers were likely to be made. In spring 2024, the hacker, posing as JBL, requested payment from Plaintiffs in the amount of $809,000 and provided wire instructions to an account at Navy Federal. Plaintiffs emailed JBL to verify the wire instructions, and the hacker confirmed them. Plaintiffs then wired $809,000 from an account they maintained at Citizens Bank to the hacker's account at Navy Federal. The wire transfer identified "JBL Construction Services, Inc." as the beneficiary, but directed the transfer to an account ending in 3826—the account the hacker set up. Navy Federal accepted the wire transfer and credited account ending in 3826. The hacker later withdrew the funds.

Navy Federal maintained several systems that generated one or more discrepancy alerts, mismatch notifications, exception flags, or similar warnings that identified that the beneficiary's name in the payment order did not match the account-holder name on account ending in 3826.[1]

---

[1] Allegations related to Navy Federal's fraud prevention systems are pled upon Plaintiffs' information and belief because Plaintiffs do not have inside access to Navy Federal's operations. "On a motion to dismiss on the ground

Such systems included Office of Foreign Assets Control ("OFAC") screening software screens, Know Your Customer ("KYC") review systems, and anti-money laundering ("AML") transaction monitoring systems. OFAC screening software reviews incoming wires, beneficiary names, account holders, and counterparties against compliance databases. KYC review systems collect and verify the legal identity of an account holder. AML transaction monitoring systems detect unusual wire transfer activities, including sudden transfers, transfers inconsistent with account purpose, mismatches between names and account numbers, and rapid withdrawals. Plaintiffs' transfer caused alerts to be raised across Navy Federal's OFAC, KYC, and AML systems because the beneficiary's name in the payment order differed materially from the name associated with account number ending in 3826. Despite these flags, Navy Federal processed the transfer, accepted the funds, and permitted the disbursement of funds to the hacker.

## II. DISCUSSION

### a. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a complaint, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint,

that the complaint does not state a claim on which relief can be granted, the rule is that the complaint must be viewed in the light most favorable to plaintiff and the truth of all facts well pleaded, admitted. This includes facts alleged on information and belief." *Melo-Sonics Corp. v. Cropp*, 342 F.2d 856, 859 (3d Cir. 1965) (citations omitted); *see also McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) ("[P]leading upon information and belief is permissible '[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control' . . . .") (citations omitted).

the plaintiff may be entitled to relief." *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017) (internal quotation marks and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" do not suffice. *Id.* at 678. Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. *Great W. Mining & Min. Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 176 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 555).

In evaluating a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (citation omitted). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id.* at 210-11. A complaint must also be dismissed where, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Thus, dismissal under Rule 12(b)(6) is appropriate where the complaint is barred by a dispositive issue of law.

**b. Count V: Violation of 13 Pa. C.S. § 4A207**

Plaintiffs' first claim against Navy Federal is for a violation of 13 Pa. C.S. § 4A207. Section 4A207 is the part of Article 4A of the Pennsylvania Uniform Commercial Code ("UCC") which governs electronic funds transfers.[2] 13 Pa. C.S. §§ 4A101-4A507; *Zhejiang Matrix SCM*

---

[2] "Electronic fund transfers begin 'with the originator's payment order' and [are] 'completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.'"

*Co., Ltd. v. PNC Bank, N.A.*, 2024 WL 1096534, at *2 (E.D. Pa. Mar. 13, 2024). Section 4A207(b), which describes the obligations and liabilities of a beneficiary's bank that receives a payment order (*e.g.*, a wire transfer order) in which the stated "name and [account] number refer to different persons[,]" *Zhejiang Matrix*, 2024 1096534, at *2 (E.D. Pa. Mar. 13, 2024) (quoting 13 Pa. C.S. § 4A207(b)(1)), provides, in relevant part:

> If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
>
> (1) Except as otherwise provided in subsection (c), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.
>
> (2) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

13 Pa. C.S. § 4A207(b).

Although Navy Federal couches its argument to dismiss the Article 4A claim against it as one of standing, in fact, its argument does not address principles of standing at all.[3] Its arguments are, rather, premised on the theory that there is a lack of privity between it and Plaintiffs, which bars Plaintiffs' claim under 13 Pa. C.S. § 4A207.

Neither the Third Circuit nor the Pennsylvania Supreme Court has addressed whether

---

*Chemalloy Co., LLC v. Citibank, N.A.*, 609 F. Supp.3d 370, 374 (E.D. Pa. 2022).

[3] Standing is the "personal stake in the outcome of a controversy." *Baker v. Carr*, 369 U.S. 186, 204 (1962). Standing under Article III of the United States Constitution requires "(1) an injury in fact, (2) a causal connection between the injury and the defendant's conduct, and (3) a likelihood that a favorable decision will provide redress for the injury." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016). Navy Federal's arguments do not address any of these requirements. "Standing" as a label for Navy Federal's argument is, thus, a misnomer.

Section 4A incorporates a privity requirement. *See Zhejiang Matrix SCM Co., Ltd. v. PNC Bank, Nat'l Ass'n*, 2024 WL 1096534, at *4 (E.D. Pa. Mar. 13, 2024) ("[T]his Court has not found any precedent from the Third Circuit or the Pennsylvania Supreme Court analyzing whether Section 4A incorporates a privity requirement . . . ."). Accordingly, Navy Federal looks beyond the Third Circuit and Pennsylvania for reasoning to support its privity argument. Specifically, it references the Second Circuit's analysis in *Grain Traders, Inc. v. Citibank, N.A.*, which held that "Section 402 of Article 4-A imposes a privity requirement such that a sender seeking a refund for an uncompleted funds transfer may look only to the receiving bank to whom it issued a payment order and payment." 160 F.3d 97, 106 (2d Cir. 1998). District courts in the Third Circuit have concurred. *See, e.g., Zhejiang Matrix*, 2024 WL 1096534, at *4 (applying the reasoning from *Grain Traders* to find that because "Plaintiff is neither a customer of Defendant nor in privity with Defendant, the Court finds any claim under Section 4A-207(b) against Defendant would necessarily fail"); *Scura, Wigfield, Heyer, Stevens & Cammarota, LLP v. Citibank, N.A.*, 2022 WL 16706948, at *5-6 (D.N.J. Oct. 3, 2022) (reading *Grain Traders* broadly to reject an argument that the court should not require privity between plaintiffs and defendants in claims arising under Section 4A207).[4]

However, the Second Circuit's analysis in *Grain Traders* is not applicable to Plaintiffs' claims here. Critically, *Grain Traders* did not involve Section 4A207. Instead, the Second Circuit held that "*Section 402* of Article 4-A imposes a privity requirement." *Grain Traders*, 160 F.3d at 106 (emphasis added). Section 4A402 governs a sender's right to obtain a refund

[4] Although the *Grain Traders* court interprets New York's Uniform Commercial Code, New York and Pennsylvania have adopted the Uniform Commercial Code and contain identical statutory language at Section 4A207. *United States v. Delco Wire & Cable Co.*, 772 F. Supp. 1511, 1520 (E.D. Pa. 1991) ("New York has adopted the Uniform Commercial Code ('UCC')."); *Glenn Dist. Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294, 301 (3d Cir. 2002) (noting that Pennsylvania has adopted the Uniform Commercial Code); 13 Pa. C.S. § 4A207; N.Y. U.C.C. Law § 4-A-207 (McKinney).

from the receiving bank. *See* 13 Pa. C.S. § 4A402. It is distinct from Section 4A207, which imposes obligations on the beneficiary bank. *See generally* 13 Pa. C.S. § 4A207. The sender and the receiving bank (here, Citizens Bank) are much closer in the chain of payment contemplated by Article 4A than the sender and the beneficiary bank (here, Navy Federal). *See Grain Traders*, 160 F.3d at 102 (describing the chain of payment in a funds transfer). *Grain Traders* makes no mention of Section 4A207.

There is an argument that the privity requirement may not apply when a plaintiff is seeking equitable relief only. *See* 13 Pa. C.S. § 4A507 cmt. 4 ("Most rights stated in Article 4A regard parties who are in privity of contract such as originator and beneficiary, sender and receiving bank, and beneficiary's bank and beneficiary . . . . But that is not always the case."). For example, at least one court has found that claims for injunctive relief under Section 4A503 against a beneficiary bank are not subject to a privity requirement. *See Elkin Valley Baptist Church v. PNC Bank, N.A.*, 748 F. Supp.3d 293, 317 (W.D. Pa. 2024).

However here, although Plaintiffs' Complaint does not contain a specific request for declaratory relief, Plaintiffs ask the Court to, nevertheless, read such request into their *ad damnum* clause. In that a "complaint may not be amended by the briefs in opposition to a motion to dismiss[,]" this the Court will not accede to their request. *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Nevertheless, Plaintiffs will be given leave to amend their Complaint to include a request for declaratory relief so that the question of whether privity exists between them and Navy Federal can be properly addressed.

### c. Counts VI through X: Plaintiffs' Negligence Claims

#### i. Preemption by 13 Pa. C.S. § 4A207

Navy Federal argues that Plaintiffs' common law negligence claims are preempted by

Article 4A of the Pennsylvania Uniform Commercial Code.[5] "Article 4A . . . is a comprehensive scheme enacted to govern electronic wire transfers."[6] *Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp.3d 653, 659 (E.D. Pa. 2020).[7] Article 4A is "intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article." 13 Pa. C.S. § 4A102, cmt. The question then

---

[5] Navy Federal also argues that Plaintiffs' "negligence based on fraudulent concealment" claim is barred by Section 606 of the Pennsylvania Banking Code. Section 606 provides in relevant part:

> (a) An institution shall not be required, in the absence of a court order or indemnity required by this section, to recognize any claim to, or any claim of authority to exercise control over, a deposit account . . . made by a person or persons other than: (i) the customer in whose name the account or property is held by the institution, or (ii) an individual or group of individuals who are authorized to draw on or control the account or property pursuant to a certified corporate resolution or other written arrangement with the customer, currently on file with the institution . . . .
>
> (b) To require an institution to recognize an adverse claim to, or adverse claim of authority to control, a deposit account . . . whoever makes the claim must either: (i) obtain and serve on the institution an appropriate order directed to the institution by a court restraining any action with respect to the account or property . . . or (ii) deliver to the institution a bond, in form and amount and with sureties satisfactory to the institution, indemnifying the institution against any liability, loss or expense which it might incur because of its recognition of the adverse claim or because of its refusal by reason of such claim to honor any check or other order of, or to deliver any property to, anyone described in clauses (i) and (ii) of subsection (a)[.]

7 Pa. C.S. § 606(a)-(b) (emphasis added). Plaintiffs did not obtain any court order or provide the indemnification required by Pennsylvania law. Nor do they allege that they made Navy Federal aware of the fraud by claiming a right to the funds. *See Zhejiang Matrix*, 2024 WL 1096534, at *3 (citing *Shooter Pops LLC v. Wells Fargo Bank, N.A.*, 649 F. Supp.3d 62, 67-68 (E.D. Pa. 2023) and *Chemalloy*, 609 F. Supp.3d at 375-76) (similarly dismissing plaintiff's negligence claim based on a failure to "timely freeze the identified funds"). Because Plaintiffs' negligence claims fail anyway for lack of duty owed to Plaintiffs as discussed *infra*, further analysis is not needed on this point.

[6] In an electronic funds transfer, the sender is the "person giving the instruction to the receiving bank." 13 Pa. C.S. § 4A103(a)(1), (a)(5). The originator is "the sender of the first payment order in a funds transfer," and the originator's bank is "the receiving bank to which the payment order of the originator is issued if the originator is not a bank." *Id.* § 4A104(c)-(d). The beneficiary is the "person to be paid by the beneficiary's bank," which in turn is the "bank identified in a payment order in which an account of the beneficiary is to be credited." *Id.* § 4A103(a)(2)-(3). The receiving bank is the bank to which the sender gives the instruction for the payment order. *Id.* § 4A103(a)(4). Here, Plaintiffs are both the senders and originators of the transfer, Citizens Bank is the originator's bank and the receiving bank, the beneficiary is the contractor JBL, and the beneficiary bank is Navy Federal.

[7] Although *Fragale* is a district court case, and thus non-precedential, the Court is persuaded by Judge Quinones Alejandro's robust analysis of whether negligence claims are preempted by Article 4A and whether the circumstances warrant imposition of a new duty on defendants like Navy Federal.

arises as to what conduct is—and is not—covered by Article 4A. "The scope of 4A is determined by the definition of 'payment order' and 'funds transfer' found in Section 4A-103 and Section 4A-104." 13 Pa. C.S. § 4A102 cmt.[8] The definitions of "payment order" and "funds transfer" "provide the precise range of transactions and/or occurrences governed by Article 4A." *Fragale*, 480 F. Supp.3d at 659. "By definition, Article 4A governs only those actions occurring between the originator's wire fund instruction ('beginning with the originator's payment order') and the beneficiary bank's acceptance of the wire transferred funds ('completed by acceptance by the beneficiary's bank of a payment order')." *Id.* Put simply, "Article 4A covers credit wire transfers." *Binns v. Truist Bank*, 803 F. App'x 618, 622 n.2 (3d Cir. 2020). "Electronic fund transfers begin 'with the originator's payment order' and are 'completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.'" *Shooter Pops LLC v. Wells Fargo Bank, N.A.*, 649 F. Supp.3d 62, 66 (E.D. Pa. 2023). Thus, to the extent that Plaintiffs' negligence claims against Navy Federal pertain to the wire transfers themselves, those claims are preempted by Article 4A.[9] *See Zhejiang Matrix*, 2024 WL 1096534, at *2 (finding that plaintiff's negligence claim was preempted by Article 4A

[8] Under the statute, a payment order is: "an instruction of a sender to a receiving bank, transmitted orally, electronically or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary if: (i) the instruction does not state a condition to payment to the beneficiary other than time of payment; (ii) the receiving bank is to be reimbursed by debiting an account of, or otherwise receiving payment from, the sender; and (iii) the instruction is transmitted by the sender directly to the receiving bank or to an agent, funds-transfer system or communication system for transmittal to the receiving bank." 13 Pa. C.S. § 4A103. A funds transfer is "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order." *Id.* § 4A104(a).

[9] Other courts have interpreted Article 4A (and similar UCC provisions) to preempt a broader category of cases. *See, e.g., Lucky Star Enterprises III, LLC v. Wells Fargo Bank, N.A.*, 585 F. Supp.3d 1297, 1304 (W.D. Wash. 2022) ("The court is not bound by *Fragale*, however, and other courts addressing the issue have widely and routinely found that the U.C.C. preempts common law claims arising out of wire transfers, especially in cases involving a name-account number mismatch.") (internal quotations omitted).

where plaintiff asserted that defendant "accepted the funds even though the wire instructions identified [plaintiff] as the holder of the beneficiary account and 'the actual account holder of the identified account did not match'").

However, it appears that Plaintiffs' negligence claims are grounded in Navy Federal's conduct related to: (1) permitting the fraudster to open and maintain the account prior to the transfer, and, (2) permitting the fraudster to withdraw the funds following the transfer—not any conduct by Navy Federal in accepting the funds transferred to that account. In other words, Navy Federal's alleged negligence arises from its opening of the account for the fraudster and failure to detect indications of fraud during the fraudster's onboarding to the account; its failure to monitor the fraudster's account or act on suspicious activity; its failure to act upon clear discrepancies between the beneficiary's name on the payment order and the name of the account holder; and, its failure to verify that JBL was not indeed the beneficiary of the account. None of these actions concern the transfer itself. *See Fragale*, 480 F. Supp.3d at 660 (finding claims premised on account opening and subsequent withdrawal of transferred funds not preempted); *see also Approved Mortg.*, 106 F.4th at 592-95 (finding claims related to post-transfer withdrawals not preempted); *Chemalloy*, 609 F. Supp.3d at 375 (same); *Elkin Valley Baptist Church v. PNC Bank, N.A.*, 748 F. Supp.3d 293, 347 n.115 (W.D. Pa. 2024) (reading an allegation that defendant transferred the money to an account opened without adhering to Know Your Customer and internal policies as stemming from breaches of a duty owed to plaintiff in *opening the account* rather than relating to the transfer); *Shooter Pops LLC v. Wells Fargo Bank, N.A.*, 649 F. Supp.3d 62, 66 (E.D. Pa. 2023) (finding no preemption where plaintiff's claim of negligence was premised on the subsequent withdrawal of funds from a fraudulent account during a time when plaintiff believed defendant should have frozen the account). None of the

negligence claims in Counts VI through X relate to the transfer of funds itself, so none are preempted by Article 4A.

**ii. Duty Owed by Navy Federal to Plaintiffs**

Plaintiffs' negligence claims (Counts VI through X) are addressed concurrently because each claim fails for lack of duty owed by Navy Federal to Plaintiffs. "It is axiomatic that to state a cause of action under Pennsylvania law for negligence, the basic elements of that tort must be pled." *Hicks v. Arthur*, 843 F. Supp. 949, 958 (E.D. Pa. 1994). "Those elements are: (1) the existence of a duty or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure on the part of the actor to conform to the required standard; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another." *Id.* (citing *Fennell v. Nationwide Mut. Fire Ins. Co.*, 603 A.2d 1064, 1066-67 (Pa. Super. 1992); *see also Chemalloy*, 609 F. Supp.3d at 376 (citing *Wisniski v. Brown & Brown Ins. Co.*, 906 A.2d 571, 575 (Pa. Super. 2006)). "A negligence claim can only lie where the defendant has a legal duty to the plaintiff." *McCracken v. Ford Motor Co.*, 588 F. Supp.2d 635, 643 (E.D. Pa. 2008). Whether a duty exists is a question of law for the court to decide. *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005).

**1. Pre-Existing Duty**

It is well established that banks do not owe a duty of care to noncustomers or third parties. *Chemalloy*, 609 F. Supp.3d at 377; *see also Adkins v. Sogliuzzo*, 625 F. App'x 565, 569 (3d Cir. 2015) ("Absent a special relationship, courts will typically bar claims of non-customers against banks.") (internal citation omitted); *Fragale*, 480 F. Supp.3d at 664 (identifying the "prevailing general rule that banks do not owe a duty of care to noncustomers."). "Courts in

numerous jurisdictions have held that a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship." *Eisenberg v. Wachovia Bank N.A.*, 301 F.3d 220, 225 (4th Cir. 2002) (collecting cases); *see also Commerce Bank/PA v. First Union Nat'l Bank*, 911 A.2d 133, 138-41 (Pa. Super. 2006) (holding that a bank had no duty absent a contractual or other relationship).

However, "in scenarios involving an actor's affirmative conduct, [the actor] is generally under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act." *Dittman v. UPMC*, 196 A.3d 1036, 1046 (Pa. 2018) (quoting *Seebold v. Prison Health Servs., Inc.*, 57 A.3d 1232, 1246 (Pa. 2012)); *see also* Restatement (Second) of Torts § 302 cmt. a (1965) (same). In some circumstances, a duty may be recognized due to a defendant's "substantial affirmative risk-creating conduct." *Elkin Valley*, 748 F. Supp.3d at 350-51.

An important inquiry, then, is "not the nature of the parties' relationship, but instead, whether the defendant engaged in 'affirmative, risk-creating conduct' such that it was obligated to act with reasonable care." *Frontline Fabrics, Inc. v. Gulipek Kumas Ve Iplik Ve*, 2026 WL 2333502, at *6 (E.D. Pa. Aug. 11, 2026) (citing *Elkin Valley*, 748 F. Supp.3d at 351). In *Frontline Fabrics*, the plaintiff alleged some facts to suggest that the defendant bank—a recipient of fraudulent funds like Navy Federal here—"knew or should have known that the account was suspicious when opened and that each transfer was potentially fraudulent." *Id.* There, the defendant allowed hackers to open a bank account in the intended recipient's name and failed to follow state and federal laws and regulations applicable to account opening, including Know Your Customer and Anti-Money Laundering regulations. *Id.* The court disagreed with *Elkin Valley* that "these facts transform the opening and maintenance of a bank

account into the type of 'affirmative, risk-creating conduct' that results in banks owing a duty of care to noncustomers who become the victims of fraud." *Id.* The court "found no case other than *Elkin Valley* that reads *Dittman* in such a way that its discussion of duty encompasses the type of conduct at issue here." *See id.*

Here, Plaintiffs' Complaint does not allege that Navy Federal took any *affirmative* steps to foreseeably increase the risk of fraud. *See Seebold*, 57 A.3d at 1246 (finding that there is generally no duty to "protect or rescue someone who is at risk on account of circumstances the defendant had no role in creating"); *see also Frontline Fabrics*, 2026 WL 2333502, at *6 (finding that defendant's actions "cannot be said to have directly led to [plaintiff's] injury" where defendant did not direct plaintiff to wire the payments to the fraudulent account). Indeed, the allegations are that it took affirmative steps to ward against fraud: it maintained several technological systems, such as OFAC screening software, KYC review systems, and AML transaction-monitoring systems to detect indicators of fraud.

In *Frontline Fabrics*, as here, the conduct of the beneficiary bank at issue was permitting the account to be opened and the funds to be subsequently withdrawn. There, the court reasoned that the facts alleged do not "transform the opening and maintenance of a bank account into the type of 'affirmative, risk-creating conduct' that results in banks owing a duty of care to noncustomers who become the victims of fraud." *Frontline Fabrics*, 2026 WL 2333502, at *6. "Creating such a duty of care under these circumstances would deter banks from conducting their own fraud investigations and informing third parties of their findings to prevent future fraud both practices benefiting noncustomers." *Shooter Pops LLC v. Wells Fargo Bank, N.A.*, 649 F. Supp.3d 62, 68 (E.D. Pa. 2023). Here, like *Frontline Fabrics* and *Shooter Pops*, Navy Federal owed no duty to Plaintiffs.

**2. New Duty**

In opposing Navy Federal's Motion to Dismiss, Plaintiffs argue that the instant circumstances justify recognizing a new duty arising from Navy Federal's "affirmative, risk-creating conduct." While as a general matter, courts should refrain from burdening defendants with new duties, *see Feleccia v. Lackawanna Coll.*, 215 A.3d 3, 13 (Pa. 2019) ("Courts should not enter into the creation of new common law duties lightly . . . . The [Pennsylvania Supreme] Court has previously adopted the default position that, unless the justifications for and consequences of judicial policymaking are reasonably clear with the balance of factors favorably predominating, [it] will not impose new affirmative duties.") (internal quotations omitted), in *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000), the Pennsylvania Supreme Court has identified five factors that courts should consider which could lead to the identification of a previously unrecognized duty: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." *Id.* "While no individual factor is dispositive, 'a duty will be found to exist where the balance of these factors weighs in favor of placing such a burden on a defendant.'" *Citizens Bank of Pa. v. Reimbursement Techs., Inc.*, 609 F. App'x 88, 92 (3d Cir. 2015) (quoting *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008-09 (Pa. 2003)). Based on the following analysis of the *Althaus* factors, no new duty will be recognized.

The first *Althaus* factor weighs "the relationship between the parties." *Althaus*, 756 A.2d at 1169. "Typically, whether the defendant owes a duty to the plaintiff arises from the relationship between those parties . . . ." *Walters v. UPMC Presbyterian Shadyside*, 187 A.3d 214, 232 (Pa. 2018); *see also Fragale*, 480 F. Supp.3d at 665 ("Duty is predicated on the

relationship that exists between the parties at the relevant time.") (quoting *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005)). "Although each person may be said to have a relationship with the world at large that creates a duty to act where *his own* conduct places others in peril, Anglo-American common law has for centuries accepted the fundamental premise that mere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act." *Walters*, 187 A.3d at 232 (emphasis in original). Absence of a relationship between the parties is a "significant factor that weighs against the existence of a duty." *Citizens Bank of Pa. v. Reimbursement Techs., Inc.*, 609 F. App'x 88, 92 (3d Cir. 2015). Here, there is no relationship between the parties. Because the parties "were essentially strangers to each other at the relevant time, this factor does not support a finding of a duty." *Commerce Bank v. First Union Nat'l Bank*, 911 A.2d 133, 139 (Pa. Super. 2006). Therefore, the first *Althaus* factor weighs against the imposition of a duty.

The second *Althaus* factor weighs "the social utility of the actor's conduct." *Althaus*, 756 A.2d at 1169. "In the context of this factor, courts generally examine whether imposing a duty would confer a benefit upon society." *Fragale*, 480 F. Supp. 3d at 665. In similar contexts to this, courts have recognized that "there is obvious social utility in banks taking action to prevent fraudulent banking activity." *Id.* Indeed, taking such action "could discourage [criminals] from continuing this conduct, and thereby help to protect third parties and minimize losses." *Id.* (citing *Commerce Bank*, 911 A.2d at 139). But, "the social utility of imposing a duty here would be mixed." *Shooter Pops*, 649 F. Supp.3d at 69. "If notifying a noncustomer about a fraud investigation creates a binding obligation, banks are far less likely to conduct such an investigation and freeze funds." *Id.* Thus, this factor is neutral because imposing a duty "would open banks to liability both from the customer, who may or may not have obtained the funds

fraudulently and is entitled to those funds absent a court order, and also a noncustomer who requested a freeze and fraud review." *Chemalloy*, 609 F. Supp.3d at 378. The second *Althaus* factor neither weighs in favor of nor against finding a duty to impose on Navy Federal.

The third *Althaus* factor weighs "the nature of the risk imposed and foreseeability of the harm incurred." *Althaus*, 756 A.2d at 1169. This factor is "the most elusive . . . both in its definition and in determining the weight it should be afforded." *Walters*, 187 A.3d at 236. Courts consider the nature and extent of the risk of harm imposed. As to the nature of the harm, the *Fragale* court rejected the notion that even a high volume of fraud incidents failed to rise to the level of risk required to establish a new duty. *See Fragale*, 480 F. Supp.3d at 666 (noting that financial harm "does not compare to other non-monetary risks such as loss of human life or physical harm"). In *Walters*, for example, the court considered the risk of the spread of hepatitis C infections absent imposition of a duty. *See Walters*, 187 A.3d at 236. Financial consequences do not often rise to the requisite *form* of harm. As to the *extent* of the harm, the *Shooter Pops* court noted that "there is no allegation that this fraud scheme extended beyond these two invoices," evidencing a cabined harm to the incidents that befell the plaintiff. *Shooter Pops*, 649 F. Supp.3d at 70. Here, the allegations are cabined to the specific transfer of $809,000 to the fraudster rather than allegations of systemic fraud that would necessitate imposing a new duty.

Turning to foreseeability of the harm incurred, "the concept of foreseeability means the likelihood of the occurrence of a general type of risk rather than the likelihood of the occurrence of the precise chain of events leading to the injury."[10] *Citizens Bank*, 609 F. App'x at 92 (quoting *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1369 (3d Cir. 1993)). The test is

---

[10] *Fragale* suggests that foreseeability ought to be weighted less than the other *Althaus* factors. *See Fragale*, 480 F. Supp.3d at 666 ("[F]oreseeability 'is not alone determinative of the duty question' and 'is not necessarily a dominant factor' in the duty assessment.") (quoting *Seebold*, 57 A.3d at 1249 n.26).

whether the harm was foreseeable in the first instance. *Commerce Bank*, 911 A.2d at 139. "Courts are leery of reading the concept of foreseeability too broadly, recognizing a general 'reluctan[ce] to impose a duty to protect a member of the general public from the harmful acts of third parties, in the absence of special circumstances.'" *Frontline Fabrics*, 2026 WL 2333502, at *8 (quoting *Commerce Bank*, 911 A.2d at 139; *Fragale*, 480 F. Supp.3d at 666). When Navy Federal opened the account, there was nothing to suggest that such an account would be used to perpetuate fraud; that is, harm was not foreseeable upon account opening. Plaintiff has a cognizable case for the foreseeability of the harm associated with Navy Federal's permitting the fraudster's withdrawal of funds given the flagged discrepancies associated with the wire transfer. *But see Frontline Fabrics*, 2026 WL 2333502, at *8 ("As for the withdrawals, the Court can do little more than speculate as to the injury's foreseeability without additional allegations about when each withdrawal was flagged, why it was flagged, and how often such flags generally occur."). Like the *Frontline Fabrics* court, this Court declines to engage in such speculation. Therefore, the third *Althaus* factor weighs against the imposition of a duty.

The fourth *Althaus* factor weighs "the consequences of imposing a duty on the actor." *Althaus*, 756 A.2d at 1169. "Under this factor, courts . . . assess whether the defendant is in the best position to prevent the harm." *Fragale*, 480 F. Supp.3d at 667. The *Fragale* court declined to impose a duty on a beneficiary bank, thereby declining "to make banks the guarantors of their clients' trustworthiness." *Id.* (quoting *Commerce Bank*, 911 A.2d at 139). This Complaint does describe in detail the duty to be imposed on beneficiary banks. *Cf. Frontline Fabrics*, 2026 WL 2333502, at *9 (describing plaintiff's advocacy that the defendant bank should be required to respond to flags of suspicious activity when known). Plaintiffs assert that Navy Federal owed a duty to Plaintiffs to exercise reasonable care in opening accounts, verify account beneficiaries,

and to assist Plaintiffs to recover the funds taken by the fraudster. Yet doing so would lead banks to adopt a hair trigger upon receipt of any anomalous transfer. Such was the rationale in *Shooter Pops*, in which the court stated that "[s]uch a liability framework could negatively impact the contractual relationship a bank has with its customers, which is paramount to the proper functioning of the institution and the services it offers." *Shooter Pops*, 649 F. Supp.3d at 69-70; *accord Fragale*, 480 F. Supp.3d at 667 ("Imposing such a duty 'would inevitably force banks to . . . restrict the[ir] clients' accounts on the least degree of suspicion, thereby alienating their customers, in order to avoid unspecified liability.'") (quoting *Commerce Bank*, 911 A.2d at 139). There, as here, Plaintiffs' "requested imposition of duties on a bank to noncustomers would subject banks to unlimited liability to an unlimited number of noncustomers." *Id.* at 668. Plaintiffs themselves were in a better position to have prevented the fraud. Understanding that JBL's email accounts had been compromised, Plaintiffs could have confirmed the account number with JBL by phone or other means. Therefore, the fourth *Althaus* factor weighs against the imposition of a duty.

The fifth *Althaus* factor weighs "the overall public interest in the proposed solution." *Althaus*, 756 A.2d at 1169. In considering the fifth factor, courts tend to examine "other [courts'] decisions in different jurisdictions as persuasive authority as to where the public interest lies." *Fragale*, 480 F. Supp. 3d at 668 (quoting *Gillen v. Boeing Co.*, 40 F. Supp. 3d 534, 541 (E.D. Pa. 2014)); *see also id.* ("This Court finds the consistent, prevailing, nationwide caselaw persuasive as indicating that there is minimal public interest in imposing the requested duties on banks like Wells Fargo under these circumstances."). This Court and Pennsylvania's appellate courts have provided substantial authority that public policy favors abstention from the imposition of a new duty in favor of relying on the existing statutory and regulatory landscape to

prevent and remediate frauds such as these. *See Fragale*, 480 F. Supp.3d at 668 ("[T]his Court finds that the prevailing general rule that banks do not owe a duty to noncustomers is persuasive and supports the conclusion that there is no public interest in imposing a duty on banks . . . to protect noncustomers from fraudulent schemes like the one alleged here."); *Shooter Pops*, 649 F. Supp.3d at 70 ("Since there is already recourse for Plaintiff to prevent fraud, it does not further serve the public interest to create new duties between a bank and noncustomer."); *Chemalloy*, 609 F. Supp.3d at 379 (same); *Frontline Fabrics*, 2026 WL 2333502, at *10 ("The public likewise has an interest in being able to access funds from their own bank account. That is why the Pennsylvania Banking Code requires a court order to freeze funds."). Therefore, the fifth *Althaus* factor weighs against the imposition of a duty.

With four factors weighing against imposition of a duty and one factor neutral, the *Althaus* factors on balance weigh against imposition of a duty on Navy Federal. Consistent with the position of the Pennsylvania Supreme Court, "[c]ourts should not enter into the creation of new common law duties lightly."[11] *Feleccia*, 215 A.3d at 13. That position is adopted here. Courts have declined to recognize a new duty under similar circumstances following an analysis of the *Althaus* factors. *See Fragale*, 480 F. Supp.3d at 669 (finding that only the second *Althaus* factor weighed in favor of imposing a new duty on defendant, with the balance of the factors weighing in the defendant's favor). In the absence of a duty to Plaintiffs, each of Plaintiffs' negligence claims in Counts VI through X fails.

**d. Count XI: Aiding and Abetting Fraud**

To state a claim of aiding and abetting fraud under Pennsylvania law, a plaintiff must

[11] "When required to interpret or apply state law, federal courts must consider and accept the decisions of the state's highest court as the ultimate authority regarding state law." *Lawrence v. City of Phila.*, 676 F. Supp. 644, 646 (E.D. Pa. 1988) (citing *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 553 (3d Cir. 1985)).

allege "(1) the existence of a fraud by a third party; (2) that defendant had 'actual knowledge of the fraud'; and (3) defendant provided 'substantial assistance or encouragement' to the party committing the fraud." *Van Horn, Metz & Co., Inc. v. PNC Fin. Servs. Grp., Inc.*, 2024 WL 1143483, at *2 (citing *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 79 (Pa. 2023)). The aider and abettor must have *actual knowledge* of the fraud; it is not sufficient that the aider and abettor should have known of the fraud. "[A]ctual knowledge does not require the aider and abettor to underst[and] the full legal significance of the facts, or all the details of the primary wrongdoing. Rather, [i]t is sufficient if the defendant was aware of facts that made the primary conduct wrongful." *Marion*, 288 A.3d at 91. It is not sufficient that the defendant was negligent or that the defendant should have known of the fraudster's wrongful conduct but did not. *Id.* at 92.

Plaintiffs have plausibly alleged Navy Federal's actual knowledge of a *discrepancy* in that they maintain that Navy Federal knew that the name on the beneficiary account did not match the account number in Plaintiffs' wire. That discrepancy was flagged by Navy Federal's OFAC, KYC, AML, and other fraud-monitoring systems. However, these indicators of a potential fraud are just that, indicators. They do not establish that Navy Federal actually knew of the fraud. Knowledge of red flags that might indicate fraud does not fulfill the actual knowledge requirement. *See Van Horn, Metz*, 2024 WL 1143483, at *3 (citing *Bud's Goods & Provisions Corp. v. Doe*, 2023 WL 4106827, at *4 (D. Mass. June 21, 2023)); *cf. Downz v. Citizens Bank, N.A.*, 2024 WL 4829719, at *5 (E.D. Pa. Nov. 18, 2024) (finding that a defendant had actual knowledge of fraudulent schemes based on prior unauthorized fraudulent deposits into the plaintiff's checking account that the defendant had flagged and returned). In *Hedden v. Navy Federal Credit Union*, 2024 WL 4609585, at *6 (E.D. Pa. Oct. 29, 2024), the court found that the defendant did have actual knowledge of a fraud where a defrauded plaintiff called the

defendant to alert the bank that a loan was fraudulently obtained, yet the defendant nonetheless processed the disbursement and transfer. *Id.* That claim of aiding and abetting fraud was "predicated exclusively on Navy Federal's failure to cancel, suspend, or reverse the disbursement and transfer of the Loan proceeds" which had been obtained fraudulently. *Id.*

Here, the hacker infiltrated JBL's systems in spring 2024 and set up an account at Navy Federal. Then, Plaintiffs sent a wire transfer of $809,000 with JBL Construction Services, Inc. identified as the beneficiary to account number ending 3826. Later, the hacker withdrew the funds. Accordingly, at the point where the fraud took place, Navy Federal knew, if anything, only that there was a mismatch between the account number that received the wire transfer and the name of the intended beneficiary on the payment order from Citizens Bank. Like the circumstances in *Van Horn, Metz*, these facts, even in the light most favorable to Plaintiffs, do not support a finding that Navy Federal had actual knowledge of the fraud.

Plaintiffs have also failed to sufficiently plead substantial assistance or encouragement to the hacker's scheme. Like the circumstances in *Van Horn, Metz*, "[t]he only connection in [the] Complaint between Defendant and the fraudulent transfers is Defendant's processing of those transactions." *Van Horn, Metz*, 2024 WL 1143483, at *3. Unlike the substantial assistance pled in *Downz*, in which the defendant bank misrepresented an account balance, Navy Federal took no action here—instead, it passively accepted the funds. Plaintiffs' aiding and abetting fraud claim fails.

**e. Count XII: Conversion**

A claim of conversion requires a plaintiff to plead the "deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." *Universal Premium Acceptance Corp. v. York Bank &*

*Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995). The tort of conversion does not require proof of intent to commit a wrong. *Rosemont Taxicab Co. v. Phila. Parking Auth.*, 327 F. Supp. 3d 803, 828 (E.D. Pa. 2018) (internal citations omitted). However, the exercise of dominion or control must be intentional. *Id.* In Pennsylvania, conversion is a willful tort. *Baram v. Farugia*, 606 F.2d 42, 43 (3d Cir. 1979). Plaintiffs assert that Navy Federal wrongfully exercised dominion over funds rightfully belonging to Plaintiffs "[t]o the extent Navy Federal retained fees, charges, or portions of the transferred funds derived from the fraudulent transaction." The only way in which Navy Federal could have committed a conversion is by transferring the funds in a manner such as to deprive Plaintiffs of control. But that logic falls apart because Plaintiffs transferred the funds themselves. Further, Plaintiffs do not actually allege that Navy Federal retained any fees, charges, or portions of the transferred funds. Plaintiffs' conversion claim fails.

## III. CONCLUSION

For the foregoing reasons, Navy Federal's motion to dismiss shall be granted. An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

**WENDY BEETLESTONE, C.J.**